[Criminal No. 508.  Filed October 29, 1921.]

[201 Pac. 551.]

## THOMAS ROMAN, Appellant, v. STATE, Respondent.

1. INDICTMENT AND INFORMATION—DEFENDANT. FAILING TO MOVE TO SET ASIDE INFORMATION BEFORE PLEADING, CANNOT OBJECT THAT HE WAS NOT LEGALLY COMMITTED, OR THAT INFORMATION WAS NOT SIGNED BY COUNTY ATTORNEY.—Under Penal Code of 1913, sections 972, 973, defendant's failure to move to set aside information before he pleads precludes him from thereafter objecting that he was not legally committed by the magistrate, or that the information was not signed by the county attorney.

2. INDICTMENT AND INFORMATION—PROSECUTION ON INFORMATION WITHOUT PRELIMINARY EXAMINATION OR WAIVER THEREOF HELD NOT

---

1. Time and method of objecting to sufficiency of indictment, note, 1 Ann. Cas. 479.

VIOLATIVE OF DEFENDANT'S CONSTITUTIONAL RIGHTS.—Where defendant charged with homicide waived preliminary examination, his prosecution on another information, charging the same offense, after county attorney had been permitted to withdraw the first information without a preliminary examination or waiver of such examination, *held* not violative of defendant's constitutional rights.

3. CRIMINAL LAW—ASSIGNMENT OF ERROR FROM WHICH IT COULD NOT BE DETERMINED WHETHER TESTIMONY WAS COMPETENT HELD INSUFFICIENT.—Assignment of error, complaining of answer of witness to certain question containing the question and answer, and objection to answer not assigning any reason why it was incompetent or irrelevant or immaterial, *held* insufficient, in that it could not be determined therefrom whether the answer was competent.

4. HOMICIDE—INSUFFICIENT ASSIGNMENT CONSIDERED IN FIRST DEGREE MURDER PROSECUTION.—In prosecution for first degree murder, the Supreme Court will consider insufficient assignment of error in view of the gravity of the charge, involving the death penalty.

5. CRIMINAL LAW—TESTIMONY AS TO STATEMENT MADE TO DEFENDANT NOT INADMISSIBLE AS HEARSAY.—Testimony as to statement by father of the witness *held* not inadmissible as hearsay, in view of the father's previously given testimony that the statement had been made to the defendant.

6. CRIMINAL LAW—COURT'S REMARK HARMLESS IN VIEW OF TESTIMONY.—Court's remark, on objection to testimony as to statement made by father of witness, that it presumed the statement to have been made to the defendant, *held* harmless, in view of father's previously given testimony that the statement had been made to the defendant.

7. CRIMINAL LAW—OPINION TESTIMONY NOT CONSIDERED ON APPEAL IN ABSENCE OF OBJECTION.—Admission of opinion testimony will not be considered on appeal, in absence of objection in lower court that the testimony constituted the opinion of the witness, or that the witness was not competent to testify as an expert.

8. CRIMINAL LAW—CONFESSIONS OBTAINED BY COERCION, THREAT, OR PROMISE INADMISSIBLE.—Confessions obtained by coercion, threat, or promise are not admissible, since such confessions are as apt to be false as true.

9. CRIMINAL LAW—CONFESSION HELD NOT TO HAVE BEEN OBTAINED BY COERCION, THREAT, OR PROMISE.—Confession to having committed first degree murder, made by defendants after they had been arrested and had been shot after attempting to shoot officers in resisting arrest, but before they had been accused of any crime,

---

9. The question of voluntariness of confession induced by threats is discussed in notes, 18 **L. R. A. (N. S.)** 833, and 50 **L. R. A.** **(N. S.)** 1077.

in response to question, "What have you boys done that makes you so wild?" *held* not to have been obtained by threat, coercion, or promise.

10. CRIMINAL LAW—CONFESSION IN RESPONSE TO APPEAL TO CONSCIENCE HELD NOT PROCURED WITH THREAT.—Confession to having committed first degree murder, made by defendants after they had been arrested and had been shot after attempting to shoot officers in resisting arrest, but before they had been accused of any crime, in response to question: "What have you fellows done that you didn't want to be arrested? If you are the men that done the robbery and murder at Tempe you better say so, because you will save some innocent man suffering"—*held* not to have been made under a threat or promise; the question being merely an appeal to their conscience.

11. CRIMINAL LAW—CONFESSION IN RESPONSE TO AN APPEAL TO RELIGIOUS OR MORAL SENTIMENT NOT INADMISSIBLE.—A confession in response to an appeal to religious or moral sentiment is not inadmissible.

12. CRIMINAL LAW—CONFESSION NOT INADMISSIBLE BECAUSE MADE TO AN OFFICER.—A confession was not inadmissible because made to an officer.

13. HOMICIDE—DEFENDANT GUILTY OF MURDER REGARDLESS OF WHETHER HE OR ACCOMPLICE FIRED PARTICULAR SHOT.—Where many shots were fired by defendant and his accomplice while robbing a store, both were guilty of murder of a boy killed during the shooting, regardless of which of the two fired the particular shot that killed the boy, they having acted together in such manner as to make each responsible for the act of the other in the furtherance of their criminal purpose.

APPEAL from a judgment of the Superior Court of the County of Maricopa. R. C. Stanford, Judge. Affirmed.

Messrs. Thalheimer & Hart, for Appellant.

Mr. W. J. Galbraith, Attorney General, and Mr. R. E. L. Shepherd, County Attorney, for the State.

ROSS, C. J.—By information the appellant was charged with the crime of murder, committed on Janu-

---

13. Authorities passing on the question of homicide in the commission of an unlawful act are collated in notes in 8 **Ann. Cas.** 973; 63 **L. R. A.** 353.

ary 11, 1921, in Maricopa county, by shooting and killing one Thomas Hintze. Thereafter, on February 16th–19th, 1921, the appellant was tried and convicted of murder in the first degree, and his punishment was fixed at death. He appeals from the verdict and judgment of conviction and from the order overruling his motion for a new trial. He assigns several errors which he claims occurred in the course of the trial. The first two are so intimately related we will consider them together. They are:

"(1) The information upon which defendant was tried and convicted was not a legally filed information, and the court did not have jurisdiction under said information to try and convict the defendant.

"(2) The defendant was never legally arraigned under such information, nor did he waive such an arraignment."

These alleged errors are predicated upon the following facts: The county attorney filed two informations against the defendant, one on February 2, 1921, upon which defendant was arraigned the same day and given until February 5th to plead. Neither on February 5th, nor on any other day, was defendant's plea to the first indictment taken, but on said day he was arraigned on a new information, and given until February 7th to plead. On the convening of court · on February 7th the county attorney asked to be allowed to withdraw the first information and to file the second one, and to the second he then pleaded not guilty. The record discloses that defendant was charged with the same offense in the informations as in a complaint theretofore filed before a committing magistrate upon which he waived preliminary trial. At the trial and at the time when the prosecution was about to offer evidence upon the charge in the information, the appellant objected to the introduction of any testimony "on the grounds that the court does not have jurisdiction of the matter because of the

fact that the defendant has never been legally committed or had a preliminary hearing or waived any such preliminary hearing as provided in article 2, section 30, of the Constitution of the state.'' The defendant made no objections to the second information at the time of his arraignment, nor at the time that he pleaded thereto. The statute (section 972, Penal Code) provides that an information may be set aside on motion on two grounds: First, that the defendant has not been legally committed by a magistrate; and, second, that the information is not signed by the county attorney. Under section 973, Id., a failure on the part of the defendant to interpose a motion to set aside the information before he pleads precludes him from thereafter objecting that he was not legally committed by a magistrate, or that the information was not signed by the county attorney. If the defendant felt that his rights had been impaired or disregarded by, the county attorney, he should have adopted the method provided by the statute to signify his dissent. Not having pursued the method provided by the statute, he will not be permitted to raise the objection upon the offer to introduce evidence. *Quen Guey* v. *State,* 20 Ariz. 368, 181 Pac. 175; *Thomas* v. *Territory,* 11 Ariz. 184, 89 Pac. 591; *People* v. *Stacey,* 34 Cal. 307; *People* v. *Bawden,* 90 Cal. 195, 27 Pac. 204.

The provision of the Constitution the defendant asserts was violated, forbids the prosecution of any person for felony by information without his having had a preliminary examination or waived such examination. The record in this case clearly shows that defendant waived the preliminary examination for the specific offense with which he was charged and convicted. We take it that the whole of defendant's grievance is that the county attorney was permitted to withdraw the first information filed against him

and to file another information charging the same offense. We cannot see how this in any manner could have prejudiced his rights. No issue had been joined on the first information, as he had not pleaded to it. At most what was done was no more than an immaterial irregularity.

The next assignment is directed to the testimony of Helen Teeter, who was testifying in behalf of the state, and to the language of the court in that connection. We give the question and answer, and also the court's remarks as they appear in defendant's assignment.

"Q. Do you recall anything that happened there at that time concerning the shooting? A. Yes, sir.

"Q. Go ahead in your own words and tell what you saw and heard at that time and place. . . . A. My father pushed the door open . . . and said, 'What is the matter, man?'

"Mr. Hart: We object to what the father said, if the court please.

"The Court: Just a minute, please. The objection is overruled. This was addressed to what I would presume to be the defendant."

It is obvious that it cannot be determined that the witness' answer or that part of it to which defendant objected was competent or not, nor can it, for that matter, be determined whether the remarks of the court were error from an inspection of the assignment. In other words, the assignment does not contain enough of substance upon which to base a decision. The objection assigns no reason why what the father said was not competent or relevant or material. No motion to strike the answer was made, nor were the remarks of the court objected to nor asked to be stricken. For the failure to specify wherein the answer of the witness was improper or the failure to object to the court's remarks so that he might correct them if erroneously made, we might well refuse to

examine the assignment, but in view of the gravity
of the charge against the defendant, involving as it
does the death penalty, we will treat the assignment
as being sufficient to present the question of the com-
petency of the witness' answer, as well also the
right of the court to make the remarks complained of.
Before Helen Teeter was put on the stand her father,
D. S. Teeter, had testified. In his testimony he had
stated that while he was eating his supper at about
6:30 P. M. on January 11, 1921, he heard some 10 or
15 shots fired, and that he and two or three others of
his family went to the door of his house facing on
the alley when he saw defendant; that he stepped
outside, and the defendant came within about six feet
of him and said, "For God sake, get out of my way,"
and "I said to him, 'What is the matter, man?' and
he said, 'For God sake, get out of my way.' " D. S.
Teeter, it will be seen, testified positively that he was
speaking to the defendant when he said, "What is
the matter, man?" And this is the language re-
peated by the daughter to which the above objection
was made.

The defendant in his brief insists that the evidence
was hearsay, and its admission for that reason was
error. This cannot be so, inasmuch as the language
was directed to the defendant and was uttered in his
presence. There had been evidence by Mr. Teeter
that his remark was addressed to the defendant, and
the comment of the court was doubtless based upon
that positive testimony. The court was clearly right
in overruling the objection, and in view of the positive
identification of the defendant as the person to whom
it was addressed, in presuming that the remark was
addressed to the defendant.

Defendant's next assignment is in the following
language:

"While. the witness F. L. Goulette was testifying for the state, the following question was asked:

" 'Q. Did you find a bullet hole there? A. Yes, sir.

" 'Mr. Thalheimer: If your honor pleases, we object to the witness testifying, unless he testifies as to the character of the indenture upon the front of the door.

" 'The Court: That is what he is going to do.

" 'Mr. Thalheimer: He said a bullet hole.

" 'The Court: Counsel has said a bullet hole. He is asking about a bullet hole. I think the objection may be overruled. He may answer.' " ·

Defendant argues in his brief that the above evidence was objectionable because it was the opinion or conclusion of the witness. That may be true, but no such objection was made at the time, nor was it objected that the witness was not competent as an expert. In other words, the question which he now presents was never presented to the lower court for a ruling.

Two witnesses, Henry R. Swink and Harry J. Saxon, testifying in behalf of the prosecution, were permitted, over the objections of the defendant, to state a confession of one Victoriano Martinez and the defendant, made at Calabasas near the Mexican line, at the time of their apprehension. The admission of this testimony, it is earnestly urged, was error. The confession and the circumstances under which it was made can be best understood and appreciated if we relate briefly the facts of the crime and circumstances of the arrest of the defendant.

On the evening of January 11, 1921, at about 6:30 o'clock, two Mexicans, operating together, held up and robbed what is known as the Baber-Jones Store in the city of Tempe, Maricopa county. One of them stood guard on the outside with a rifle, while the other entered the store and held up Mr. H. C. Baber, a member of the firm, and took from him about $290.

During the time that it took to rob the store a great many shots were fired. The man on the outside had a rifle and was shooting indifferently at everybody that came in sight, while the man in the store who was doing the looting shot Mr. Baber twice and possibly discharged his revolver more times. Besides wounding Mr. Baber very seriously, a nine year old boy by the name of Thomas Hintze, and a deputy constable by the name of Spangler, were killed. The desperadoes then fled from the scene, and were traced by an unbroken chain of evidence to Calabasas near the Mexican border where they were arrested.

On the morning of the 14th of January, at about 8:30 o'clock, the automobile stage running between Tucson and Nogales reached Calabasas, where there happened to be at that time two United States government inspectors and line riders, Henry R. Swink and Earl A. Lemon. There were also there at the time two cattlemen, Harry J. Saxon and R. Pugh Leatherman. After the stage had stopped the defendant and his companion Victoriano Martinez alighted, and they had proceeded away from the stage only a few feet when Swink said to them, ''Stop! You are prisoners.'' He then called to Lemon, who brought a pair of handcuffs. As Swink was walking with his head down, unlocking the handcuffs, and when he had approached within about four feet of his prisoners, the defendant, Roman, jumped back and said, ''No,'' and at the same time drew a revolver, threw it down on Swink, and demanded that the latter surrender, at the time discharging his revolver. At about the same time someone shot at the defendant, striking the arm holding his revolver, whereupon it fell to the ground; almost instantly he was shot again, and he fell to the ground, and as he fell he called to his companion, Martinez, to shoot. Martinez thereupon grabbed the gun that had fallen from defendant's hand, and threw

it down on Swink, who thereupon shot Martinez, the bullet entering his neck. The defendant and his companion were placed upon a blanket and made as comfortable as possible, where they remained for awhile. After a bit they requested to be allowed to sit up.

Harry Saxon relates that he took a seat right near by the defendant and Martinez, and asked them the question:

"What have you boys done that makes you so wild?" and "they hesitated a little, and then Martinez spoke up and said, 'We robbed a store. . . . ' Martinez, before he told me that, turned to this Roman and said, "We might as well tell; we are up against it now,' and Roman nodded his head as if to say, 'Yes.' Roman didn't talk much. He seemed to be pretty sick. Martinez then said, 'We robbed a store and killed some few people in Tempe,' and I said to Roman, 'Is that right?' and he said, 'Yes.'"

Upon Swink returning from the house where he had gone to get a drink of water or a blanket, Saxon asked Martinez and defendant questions in Swink's presence, and they made the same statement, or practically the same statements. Swink in his testimony relates that he heard Saxon say:

"What have you fellows done that you didn't want to be arrested? If you are the men that done the robbery and murder at Tempe you better say so because you will save some innocent man some suffering."

And to this Martinez said:

"We are the men that robbed the store and killed some people at Tempe."

Then Roman, being asked by Saxon, "Is that so?" nodded his head in assent and said, "Yes." Before the witness Swink testified as to the confession the court asked the defendant whether he wished to question the witnesses concerning the circumstances of

the confession, and the defendant's counsel replied that they would do that on cross-examination. In the cross-examination no effort was made to show the statement was induced by threats or promises.

The defendant testified in his own behalf. On his direct examination he gave his version of the confession as follows:

"One of the gentlemen in the crowd says to us, 'If you are the ones that made the assault at Tempe, why do you not say it?' As I did not consider myself guilty, I didn't answer and kept quiet. Then Martinez answered and says, 'Yes, I am,' and they says, 'Are you?' and I says, 'I want some water.' That was all, and I didn't speak a word. . . . I didn't nod my head when they asked me whether what Martinez said about the crime in Tempe was true. . . . I was sick, but I was with my five senses."

The question is: Were these extrajudicial statements by defendant under the circumstances in which they were made voluntarily made? If so, they were admissible. Otherwise, they were not. It is the law that confessions "obtained by coercion or threat or promise will be subject to objection." *Hardy* v. *United States,* 186 U. S. 224, 46 L. Ed. 1137, 22 Sup. Ct. Rep. 889; *Bram* v. *United States,* 168 U. S. 532, 42 L. Ed. 568, 18 Sup. Ct. Rep. 183 (see, also, Rose's U. S. Notes). This is upon the theory that such confessions are as apt to be false as true.

"The fundamental principle upon which confessions have been excluded which are induced by promises or threats, hope or fear, is that under such circumstances the temptation to speak falsely is so great as to render the statement entirely untrustworthy." *Territory* v. *Emilio,* 14 N. M. 147, 89 Pac. 239.

The defendant and Martinez, at the time they made their statement, had not been accused of any crime, and it is doubtful if they were even suspected by Swink as having committed the murders and robbery

at Tempe at the time he undertook to arrest them. It is not shown how long after the defendant and Martinez had been subdued it was before they confessed. It was, however, not immediately. It was not first made to the officer, Swink, but in his absence, to the civilian Saxon. Saxon did not accuse them. He said, "What have you boys done that makes you so wild?" There was certainly no threat or promise in this question. The desperate resistance to arrest no doubt aroused in the mind of the questioner a suspicion and prompted the question, and whatever may have been the reason that actuated the defendant and Martinez in confessing their connection with the Tempe murders it is not apparent that they did so under any threat, or fear, or hope, or promise.

True, Swink in his testimony gives a slightly different version of what was said when upon his return Saxon sought to get a repetition of the confession made to him. Swink says Saxon's question was:

"What have you fellows done that you didn't want to be arrested? If you are the men that done the robbery and murder at Tempe you better say so because you will save some innocent man suffering."

The courts have in many cases held that an adjuration to an accused "that it would be better to tell the truth" may be so worded as to imply a threat or a promise making it inadmissible as evidence. A number of such cases are cited by Mr. Justice WHITE in his very able and elaborate opinion in *Bram* v. *United States,* 168 U. S. 532, 42 L. Ed. 568, 18 Sup. Ct. Rep. 183. We do not think the admonition to the defendant and Martinez in this case is of that character. In effect they were told that if they had committed the crime at Tempe, by admitting it, they would save innocent persons from thereafter being accused of it or punished for it. There was no promise of leniency held out to them in that; nor did

it contain any threat. It was rather an appeal to their consciences. The rule seems to be that a confession in response to an appeal to religious or moral sentiment is not inadmissible. *State* v. *Williams,* 129 La. 215, Ann. Cas. 1913B, 302, and note, 55 South. 769. Both the defendant and Martinez had been very seriously wounded, and were at the time doubtless suffering considerable pain. Martinez died very shortly thereafter. Believing that death was impending, it is possible that there was enough of the milk of human kindness in these men to prompt them to save, as suggested, by the officers, others from being charged with the offense of which they were guilty, and hence their confession. The inducement to speak up was not of a temporal or worldly nature.

The confession was not inadmissible, because it was made to an officer. *Sparf* v. *United States,* 156 U. S. 51, 715, 39 L. Ed. 343, 15 Sup. Ct. Rep. 273; *Wilson* v. *United States,* 162 U. S. 613, 40 L. Ed. 1090, 16 Sup. Ct. Rep. 895; *Lindsey* v. *State,* 66 Fla. 341, Ann. Cas. 1916C, 1167, 50 L. R. A. (N. S.) 1077, and note 1084, 63 South. 832.

The defendant who was a witness in his own behalf did not claim in his testimony that any coercion or threat or promise was made by Swink and others who arrested him and Martinez. He admits that Martinez confessed that he was guilty of the Tempe offense. From his own mouth he admits hearing Martinez confess to the crime. He says that he was in possession of his "five senses." He does not deny admitting that he was present and participated with Martinez in the crimes. We think this assignment of error is without merit, and that the confessions were properly admitted.

The refusal of the court to give the following instruction requested by the defendant is next assigned as error:

"You are instructed that, even though you may believe from the evidence that the defendant was the man who shot H. C. Baber, the owner of the store which was robbed, unless you further believe from the evidence beyond all reasonable doubt that the defendant fired the shot which killed the boy Hintze, and that such killing of the boy Hintze was a willful, premeditated, and deliberate action on his part, you must bring in a verdict of not guilty."

From the statement of facts heretofore given it is clear that this instruction is erroneous, and was very properly refused. It could make no difference whether defendant or Martinez actually shot and killed Thomas Hintze. It is clear that they acted together in such a manner as to make each responsible for the act of the other in the furtherance of their criminal purpose.

We have very carefully and thoughtfully looked into the record of this trial, and are satisfied that the defendant was accorded all of the rights he was entitled to under the law, and that no error of a prejudicial character was committed in his trial.

The judgment is therefore affirmed.

The date of April 29, 1921, originally fixed for defendant's execution, having passed, it is ordered that judgment be entered by this court fixing the time when the original sentence of death shall be executed, as required by section 1177 of the Penal Code.

McALISTER and FLANIGAN, JJ., concur.