276 P.2d 520

STATE of Arizona, Appellee,

v.

Harry LUBETKIN, Appellant.

No. 1050.

Supreme Court of Arizona.

Nov. 15, 1954.

W. H. Chester, and Frank A. Howard, Phoenix, for appellant.

Ross F. Jones, Atty. Gen., Roderick M. Jennings, Asst. Atty. Gen., for appellee.

PHELPS, Chief Justice.

On July 14, 1953, a complaint was filed before a magistrate in Precinct No. 2, Pima County, Arizona, against defendant-appellant charging that he did then and there wilfully and with intent to defraud one Sherman Richardson, make, draw, utter and deliver to the said Richardson a check on the University Office of the Valley National Bank at Tucson, Arizona, for the payment of money knowing at the time there were insufficient funds in or credit with the bank to meet such check upon its presentation. The complaint was sworn to before Peter Sownie, acting justice of the peace, on May 27, 1953. The said Peter Sownie is city magistrate of the city of Tucson.

Section 44–101, A.C.A.1939, provides that:

"A magistrate is an officer having power to issue a warrant for the arrest of a person charged with a public offense. The chief justice and the judges of the Supreme Court, the judges of the superior court, justices of the peace and police magistrates in cities and towns are magistrates."

Under the provisions of section 16–1101, A.C.A.1939, the court over which a city magistrate presides has concurrent jurisdiction with justice courts in the precincts where said city or town is established, over all violations of the laws of the state committed within the limits of said city or town. The order holding defendant to answer to the superior court was signed by Clark H.

Johnson, justice of the peace of Precinct No. 2 on the same date the complaint was filed.

On July 15, 1953, the county attorney for Pima County filed in the superior court of that county an information containing eight counts charging defendant with having on different dates during the early part of May wilfully and with intent to defraud the persons named in the respective counts by making, drawing, uttering and delivering thereto a check on the University Office of the Valley National Bank at Tucson, Arizona, for the payment of money knowing at the time that there were insufficient funds in the bank or credit with said bank to meet said check in full upon its presentation, all in violation of section 43–2613, A.C.A.1939.

The record brought into this court does not include a complaint in the justice court or order holding defendant to answer to the superior court on Counts I to VII inclusive of the information but the minute entries of the superior court of July 29 show that upon stipulation of the attorneys for the state and the defendant cases Nos. 8877 and 8876 were consolidated for all future purposes and both cases were agreed to be heard in Division No. 2 as set. The information filed in the superior court and brought here bears number 8876–II. This is the number given by the clerk of the superior court to the complaint hereinabove mentioned as having been filed in the justice court and the order of commitment upon which Count No. VIII of the information is based.

The defendant was duly arraigned and entered pleas of not guilty as charged in the information. Upon trial defendant was convicted on each count and sentence and judgment was pronounced thereon. Defendant appeals from said judgment of conviction and from the order denying his motion for a new trial.

Counsel for defendant have presented nine assignments of error for our consideration which we will consider in the order presented.

Assignment No. 1 charges that the court erred in entertaining defendant's plea on an information containing eight separate counts where the transcript of the preliminary hearing discloses that defendant was bound over on only one of said counts, and further upon the ground that the complaint is signed by an "acting" justice of the peace not qualified by law to administer the oath under such complaint, and lastly, upon the ground that no preliminary hearing was had or waived on seven of the counts in the information.

In answer to the assertion that no preliminary hearing has been had or waived, section 44–503, A.C.A.1939, provides in part that:

"* * * The fact that a preliminary examination was neither had nor waived [in offenses punishable by death or imprisonment in the peniten-

tiary] shall in no case invalidate any information in any court unless the defendant shall object to such information because of such fact before pleading to the merits."

The record nowhere discloses any objection by counsel in the trial court because of the fact that no preliminary hearing was held before a magistrate in Counts I to VII inclusive of the information, nor was any motion made to quash said information based upon that ground. In such event under the provisions of section 44–1005, A.C.A.1939, defendant's remedy was by motion to quash. Having failed to present such motion to the court defendant has waived any error resulting from a failure, if any, to hold a preliminary hearing in the justice court. Roman v. State, 23 Ariz. 67, 201 P. 551. In the recent case of State v. Coursey, 71 Ariz. 227, 225 P.2d 713, the identical question here presented was decided in language so clear that it could not be misunderstood.

█ It is next claimed that the city magistrate before whom the complaint upon which Count VIII of the information is based was without authority to administer an oath. This is wholly without merit as evidenced by sections 44–101 and 16–1101, supra.

█ It is next urged that the transcript of the preliminary hearing discloses that defendant was held to answer only on one count of the information. Counsel no-

where charges that defendant was not in fact held to answer on the other seven counts thereof. He merely says the record does not show this to be a fact. In the absence of a showing to the contrary it will be presumed that the magistrate and the county attorney performed their official duties under the law and under their oath of office. It is a well-settled rule that every public officer does his duty. Donaldson v. Sisk, 57 Ariz. 318, 113 P.2d 860; Chenoweth v. Budge, 16 Ariz. 422, 145 P. 406; Quen Guey v. State, 20 Ariz. 363, 181 P. 175.

The same question presented in assignment No. 1 is also presented in assignment No. 2, and of course the rule laid down in State v. Coursey, supra, is equally applicable and fully answers the contention of defendant.

It is next claimed in assignments 3, 4 and 5 that:

(a) The court erred in pronouncing judgment and sentence upon defendant for the reason that the verdict is insufficient to support a judgment of conviction;

(b) That the court erred in accepting a verdict wherein the jury did not determine under the provisions of section 43–2613, A.C.A.1939, as a matter of fact, the degree of the crime as required under section 44–1921, A.C.A. 1939; and

(c) That the court erred in pronouncing judgment in the case for the

reason that it fails to convict defendant of being guilty of drawing on an insufficient account with knowledge of and with intent to cheat and defraud.

Assignments 3 and 5 are based upon the failure of the verdict and judgment respectively to have incorporated therein the following:

"Guilty of drawing on insufficient account with knowledge thereof with intent to defraud."

instead of "guilty of drawing on insufficient account". There is no merit whatever to either of these assignments, and we have so held in at least three cases, two of which are Holder v. State, 31 Ariz. 357, 253 P. 629; Roman v. State, supra. Section 44–1914, A.C.A.1939, provides that:

"A general verdict is one finding the defendant guilty or not guilty."

It would have been entirely sufficient therefore if the verdict in the instant case had been simply "guilty". Such a verdict would have been a general verdict and would have imported a conviction of the offense charged in the information.

In Holder v. State, supra [31 Ariz. 357, 253 P. 630], where it was charged that defendant did wilfully, unlawfully and feloniously alter the brand upon a certain two-year old steer, the personal property of Richard W. Bullard with the intent of feloniously converting the same to his own use, the jury in that case returned a verdict of "guilty of felony, to wit, altering a brand." The court there in discussing the provisions of section 1084 of the 1913 Penal Code providing that:

" 'A verdict upon a plea of not guilty is either "guilty," or "not guilty," which imports a conviction or acquittal of the offense charged in the indictment or information. * * * ' "

distinguished between a general and special verdict, the one being a definite finding that defendant did or did not commit the crime charged and the other being one by which the jury finds the facts only, leaving the judgment to the court. It presents to the court conclusions of fact leaving nothing to the court but to draw conclusions of law upon them. The court stated that if the jury had stopped with the word "guilty" it would have returned a verdict which according to section 1084, P.C.1913, would have imported that appellant had committed the precise offense charged in the information. The court then adds:

"We think it would be hypertechnical to say that, when a jury finds a defendant 'guilty' and adds words describing unmistakably the crime charged by the information, the verdict is void, even though the words of description are not as apt as a careful lawyer might use. In the case at bar, we cannot hold the jury did not find the appellant guilty of the precise offense of which he was accused, except by disregarding common sense, logic, and the plain facts, and resorting

to verbal quibbling and technical rules of construction worthy of that character in Hudibras 'who could a hair divide, between the south and southwest side.' "

In the case of Tate v. State, 56 Ariz. 194, 106 P.2d 487, defendant was charged with obtaining money from another with intent to cheat and defraud by means of a false and bogus check. The jury returned a verdict of " 'guilty of obtaining money by means of a bogus check, a felony.' " The court said:

"* * * It is seen the verdict omits, in terms, to find appellant obtained the money 'with intent to cheat and defraud.' * * * Whether that was necessary depends upon the character of the verdict. If it be regarded as a special verdict, or a verdict presenting 'the conclusions of fact as established by the evidence' * * * the ingredient of intent should have been found; but, if the verdict is a general one, it contains all the elements of the offense charged."

The court held the verdict to be a general verdict and therefore valid. Citing Holder v. State, supra.

Both of the above cases involve exactly the same principle as raised in the instant case. There is no provision for a special verdict in a case of this kind, yet the reason in those cases is equally as applicable and as cogent in the determination of the question here raised.

We therefore hold that both the verdict and the judgment are valid. The verdict is a general verdict and the addition of the words "drawing on insufficient account" merely describes the offense charged under the title by which it is generally known.

It is urged in assignment No. 4 that the verdict should not have been accepted because it did not state affirmatively the degree of the crime. Again this identical question was determined in the case of State ex rel. De Concini v. Sullivan, 66 Ariz. 348, 188 P.2d 592, 595, wherein the court said:

" 'A felony is a crime which is punishable with death or by imprisonment in the state prison; every other crime is a misdemeanor. When a crime punishable by imprisonment in a state prison is also punishable by fine or imprisonment in a county jail, in the discretion of the court, it shall be deemed a misdemeanor for all purposes after a judgment imposing a punishment other than imprisonment in the state prison.' "

The court then said:

"The respondent having been sentenced to prison, his offenses must be characterized as felonies."

The section of the statute under which this action is prosecuted is 43–2613, A.C.A. 1939, which reads as follows:

"*Drawing check on insufficient account.*—Every person who, for himself

or for another, wilfully, with intent to defraud, makes or draws or utters or delivers to another person any check or draft on a bank, or depositary for the payment of money, knowing at the time of such making, drawing, uttering, or delivery, that he, or his principal, has not sufficient funds in, or credit with such bank or depositary, to meet such check or draft in full upon its presentation, is guilty of a crime, and is punishable by imprisonment in the county jail for not more than one (1) year or in the state prison for not more than fourteen (14) years. The word 'credit' as used herein shall be construed to be an arrangement or understanding with the bank or depositary for the payment of such check or draft."

It will be seen from the language employed in the act that it does not purport to create degrees in the crime denounced. It simply places with the judge of the court where the conviction is had the discretion to impose either a fine or imprisonment in the county jail or to impose a sentence of imprisonment in the penitentiary. It is the exercise of this discretion by the judge in fixing the punishment in the sentence that characterizes the offense as a felony or a misdemeanor.

■ Defendant's assignment No. 6 complains that the court committed error in admitting evidence concerning a note given one Russell Baldwin in consideration of a loan made by Baldwin to the defendant. This is based upon the ground that no connection was ever established between the giving of such note and any offense charged in the information. We are of the view that any evidence received concerning this note was improperly admitted for the reason that it was wholly unrelated to any insufficient funds check given by defendant to Baldwin or to anyone else. It certainly was not admissible upon the theory that it was a part of a scheme or plan to cheat or defraud the complaining witness by making and delivering to him a check drawn on an insufficient account knowing that he then had no funds in or credit with the bank to meet the amount named in the check in full when presented. The transaction is completely dissimilar to uttering and passing a check on an insufficient account. It involves no crime whatever. The court said he was admitting it solely for the purpose of showing knowledge of the amount of his bank account and whether or not he was overdrawing on it. We do not see how such testimony would tend in any wise to show knowledge of the balance in his bank account any more than if such loan had not been made.

We have carefully read the testimony of the witness Baldwin concerning this loan both on direct and cross-examination and the only question that would tend to prejudice defendant is one asked by the county attorney if defendant had ever paid the note. No objection was made to this question. Counsel for defendant on cross-

examination even developed the fact that defendant had procured other loans from other people employed by him including a Mr. Gyori and a Mrs. Snyder. Under all the circumstances we are of the view that while it was error to admit testimony concerning the loan of Baldwin to defendant, it was not prejudicial error even if objection had been made. No objection having been made, however, defendant may not now complain.

Defendant's assignment of error No. 7 is based upon the assertion that the court committed error by commenting upon the evidence and "by propounding questions which could be construed to be biased and prejudicial against the defendant." An examination of the reporter's transcript on the pages cited by counsel does not disclose that the court asked any questions at all of the witness Baldwin. The only words spoken by the court according to the transcript on the pages indicated are, "Read the question, please, Mr. Weiss." and again when Mr. Udall asked "Who signed it, if you know?" (meaning the note) to which objection was made and the court simply ruled upon the objection by saying, "Answer the question. 'Who signed the note?'". The assignment is therefore frivolous.

Assignment No. 8 asserts:
"That the court committed error in allowing in evidence matters extraneous and immaterial to the issues of the cause and by allowing over objection of defendant hearsay testimony and matters detrimental to the character of the defendant where defendant had never taken the stand or in any way put his character in issue."

There is nothing in the assignment that indicates in the slightest degree what defendant has in mind as constituting the elements of which complaint is made. In view of the fact, however, that there are eight counts against defendant and the sentences imposed thereon by the court run consecutively we have carefully read all of the evidence in the case consisting of 450 pages and have checked it against the portions of the evidence to which reference is made in defendant's brief as constituting the errors of which complaint is made. Counsel argue that it was error for the court to admit testimony of the witness Robert Giles concerning a fund contributed by the employees and placed in a bottle which in turn was put in a metal file in the office of the defendant. The fund collected was donated by employees for the use and benefit of one of their fellow employees who was afflicted with tuberculosis. The evidence disclosed that this fund was taken and used by defendant. No objection was made by defendant to any of the evidence. Therefore it was not reversible error to admit it.

It is next argued that it was error to admit evidence concerning defendant's offer to sell the witness Giles and his wife a 1952 Ford car which defendant had

rented in Chicago. Again no objection was made to this evidence. The claim of error therefore is without merit. Defendant claims that his objection was preserved by stipulation with the attorney for the state to the effect that his objection would go to all questions propounded by the state without the necessity of repeating it. The record discloses no such stipulation existed. Counsel for defendant expressly declined Mr. Udall's offer to stipulate to that effect.

Defendant next asserts that the entire examination of the witness Harold A. Balco concerned matters not in issue and was therefore erroneous. Mr. Balco testified to business transactions with defendant in which defendant incurred a printing bill with the witness in excess of $1,300, only $250 of which was paid. No objection was made to such testimony and counsel for the defendant cross-examined the witness at length in which he developed further facts than those elicited by the state and without objection sought to show defendant's good taste or good judgment in ordering the quality of stationery he procured from the witness and even went into the quality of beverage defendant was manufacturing. Under the circumstances it was not reversible error to admit the evidence.

The next evidence alleged to have been prejudicial to which the attention of the court is called is the testimony of Lillie May Hayes, former wife of defendant.

Counsel had objected to the evidence of this witness upon the ground that it was privileged because the things about which she would be asked to testify occurred during the existence of the marital relation with defendant but withdrew said objection and stated that he did so "on being fully advised that this woman will be inclined to tell the truth, we will waive our objection." Certainly defendant under such circumstances cannot now be heard to complain.

It is next contended that all of the testimony of John Gyori concerning loans made by him to defendant in the sum of $4,500 and the failure of defendant to repay the loan is error. Counsel for defendant not only did not object to this testimony but on cross-examination of the witness Baldwin developed the fact that Gyori had made a loan to the defendant. Under the circumstances the complaint is without merit.

 The next contention is that the testimony of detective Sam Buford with the Kentucky State Police with headquarters at Frankfort, Kentucky, should not have been admitted. Detective Buford arrested the defendant at Hopkinsville, Kentucky. He was permitted to testify that Mabel Snyder of Tucson was with defendant at the time of his arrest and was also permitted to relate his conversation with her in the presence of defendant concerning where they had been, where they were going and concerning the contents

of the car of Mrs. Snyder in which they were riding at the time, etc. We think the testimony was admissible. 20 Am.Jur., Sec. 561, p. 475. An arresting officer may always testify to conversations he had with the defendant at the time of the arrest or with an associate in his presence and as to where they had been and where they were going would certainly be admissible upon the ground that it tended to prove flight from the locale of the offense charged.

The last assignment raises the question of the correctness of an instruction given by the court at the request of the state. The instruction reads as follows:

"You are further instructed that although the verdict to which each juror agrees, must, of course, be his own verdict and the result of his own convictions and not merely acquiescence in the conclusion of his fellows, yet in order to bring twelve minds to a unanimous result you must examine the question submitted to you with candor and with proper respect and deference to the opinions of each other. There is no reason to suppose that this case will ever be to twelve more intelligent, more impartial or more competent jurors to decide it, or that more or clearer evidence will be produced on one side or the other. With this in view it is your duty to decide this case if you can without yielding to conscientious convictions. In conferring together you ought to pay proper attention to each other's opinions and listen with a disposition to be convinced by each other's arguments, and, on the other hand, if a larger number of your panel are for conviction a dissenting juror should consider whether a doubt in his own mind is a reasonable one which makes no impression on the minds of so many jurors equally honest, equally intelligent with himself, who have weighed the same evidence, with the same oath; and if on the other hand, the majority are for the defendant the minority should ask themselves whether they may not and ought to reasonably doubt seriously the correctness of a judgment which is not concurred in by most of those with whom they are associated, and distrust the weight and sufficiency of that evidence which fails to carry conviction to the minds of their fellow jurors."

We are of the view that this is a perfectly good instruction, that it fairly instructs a juror as to the nature of his duty when he stands alone against the conviction or acquittal of a defendant. This instruction was given at the time the case was originally submitted to the jury. This fact distinguishes it from the case of State v. Voeckell, 69 Ariz. 145, 210 P.2d 972. There the jury had been out 52 hours and apparently were unable to agree upon a

102

verdict when they were called in to the court and given this instruction. It was claimed in that case that it was coercive in its nature. Despite the claim, however, the majority of this court affirmed the conviction in that case and we are of the view at this time that the instruction is correct.

For the reasons hereinabove stated, the judgment of the trial court is affirmed.

STANFORD, LA PRADE, UDALL and WINDES, JJ., concur.