333 P.2d 728

STATE of Arizona, Appellee,

v.

Lonnie CRAFT, Appellant.

No. 1117.

Supreme Court of Arizona.

Dec. 31, 1958.

Patrick W. O'Reilly, Phoenix, for appellant.

Robert Morrison, Atty. Gen., Charles C. Stidham, Maricopa County Atty., and Lawrence C. Cantor, Chief Deputy County Atty., Phoenix, for appellee.

WINDES, Justice.

Lonnie Craft, the appellant, was charged with murder in the first degree, convicted and the extreme penalty of death imposed. He appeals and will be designated herein as defendant.

■ The facts for which there is supporting evidence are that defendant was formerly the husband of Virginia C. Craft, the victim of the alleged homicide. She was an employee of the Dispatch Laundry, across the street from the Sublette restaurant. About 8:00 o'clock in the morning he accompanied her downtown and arranged to meet her at the restaurant for lunch. He was attempting a reconciliation. After she had gone to work, defendant waited until 10:00 o'clock for the Savings and Loan Association to open where he had funds on deposit. He drew money from the account and purchased a pistol and ammunition. They met as planned and ordered some lunch. While they were having a conversation, defendant shot twice. Virginia fell to the floor and defendant continued shooting her to death while she was on the floor and then shot and wounded himself. Subsequently, in a statement he said she told him while at the restaurant she was tired of him and was going to leave him. He also stated that he purchased the pistol to use on both of them because she wanted to leave him and didn't want him around. Defendant contends that the evidence was insufficient to warrant a conviction of first degree murder. There is no merit to the contention. The jury was justified in finding that in killing the victim, the defendant was prompted by not only malice aforethought but that the same was premeditated.

■ Error is assigned because the court refused to instruct the jury that proof of a homicide by means of a revolver does not itself compel the presumption of premeditation or deliberation and that there may be an intention to kill which may not amount to a premeditated design and shooting intentionally is not necessarily the same as doing so with premeditation. The trial court in its instructions carefully defined first degree murder as a premeditated killing with malice aforethought; defined premeditation and malice; told the jury that both must be proven beyond a reasonable doubt to convict of first degree and that the defendant was presumed to be innocent. Under the trial court's thorough instructions there was no possibility of the jury arriving at its verdict by presuming premeditation merely because the homicide was committed by means of a revolver.

The jury in effect was also told that there may be in contemplation of law an intention to kill which may not amount to a premeditated design to kill. Since the matters in the requested instructions were adequately covered, there was no error in refusing the same.

█ It is claimed that while defense counsel was arguing to the jury, he was interrupted by a disturbance created by the mother of decedent exclaiming within the hearing of the jury: "He killed my baby, he killed my baby." There was no request for a mistrial or cautionary instruction at the time the claimed incident occurred. The matter was raised on motion for new trial. There is nothing in the record as to what happened except the argument of counsel and memory of the trial judge on motion for new trial. In this argument counsel for defense and for the state presented different versions of what transpired. Defense counsel gave the impression of considerable commotion in the presence of the jury and interruption of his argument. This is contrary to the remarks of the court and statements of the prosecuting attorney. The county attorney stated he was sitting close to the alleged offender and heard a muttering and to avoid possible confusion or unfortunate incident he interrupted defense counsel and conferred with the court, after which the trial judge had the bailiff enter the back of the courtroom and without apparent observation cause the lady to leave the room. The court heard no remark and saw no evidence that any juror heard the same. According to the court's remarks there was no commotion. Under these circumstances the trial judge is certainly in a much better position to determine whether the incident possibly influenced the jury than this court. We do not feel that under these circumstances we are warranted in saying that the defendant was prejudiced.

█ The jury was given the case after five o'clock in the evening. About 11:00 o'clock the next morning it requested a rereading of the instructions which was done. Thereafter the court sua sponte gave the jury the following instruction:

"I am going to give you a further instruction, ladies and gentlemen, at this time. You are instructed that although the verdict to which each juror agrees must, of course, be his own verdict and the result of his own convictions and not a mere acquiescence in the conclusion of his fellows, yet in order to bring twelve minds to a unanimous result you must examine the question submitted to you with candor and with proper regard and deference to the opinions of each other. There is no reason to suppose that this case will ever be submitted to twelve more fair and impartial and intelligent ju-

rors than yourselves or those more competent to decide it, or that more and clearer evidence will be produced on one side or the other. Now, with this in view, it is your duty to decide this case if you can without yielding your conscientious convictions. In conferring together you ought to pay proper attention to each other's opinions and listen with a disposition to be convinced by each other's arguments; and, on the other hand, if a larger number of your panel are for conviction, a dissenting juror should consider whether a doubt in his own mind is a reasonable one which makes no impression on the minds of so many jurors equally honest, equally intelligent with himself, who have heard the same evidence and have taken the same oath; and if, on the other hand, the majority are for the defendant, the minority should ask themselves whether they may not and ought not to reasonably doubt seriously the correctness of a judgment which is not concurred in by most of those others with whom they are associated, and distrust the weight and sufficiency of that evidence which fails to carry conviction to the minds of their fellow jurors. Now, this instruction has been given you in order to assist you in attempting to arrive at a verdict if you possibly can under all of the in-structions of the Court which I have heretofore given you and that which I have just now given you. With this instruction, ladies and gentlemen, I will request that you continue your deliberations."

The verdict was returned two hours and fifteen minutes after the instruction was given.

This instruction has been twice approved by this court. State v. Voeckell, 69 Ariz. 145, 210 P.2d 972; State v. Lubetkin, 78 Ariz. 91, 276 P.2d 520. The contention is made that the attendant circumstances were such that the instruction tended to coerce and importune the jury to an agreement and deprive defendant of a free unbiased judgment of the jurors. It is said that it was erroneous because there had been an insufficient period of deliberation to warrant the same.

There may be circumstances that would render this instruction invalid. If there is anything in the instruction from which it may be inferred the court wants a conviction or suggests that a dissenting juror surrender his independent judgment, it should not be given nor should the instruction overemphasize the importance of an agreement. There is nothing in the instruction that encourages a juror to surrender his individual judgment. It expressly says that a juror's verdict must be the result of his own conviction and says

148

they should reach a verdict if possible without yielding conscientious convictions. There is nothing in the instruction that indicates the court desired conviction nor does it overemphasize the importance of any verdict. The effect is to tell the jury not to be unreasonable or arbitrary and to honestly and reasonably approach the problem with a view to arriving at a verdict if possible without surrendering their conscientious convictions. The instruction was approved by Massachusetts over one hundred years ago and has since been followed by many federal and state courts. Annotation 85 A.L.R. at page 1436.

Defendant lays stress upon the fact that the jury was not deadlocked and did not ask for further instructions but merely a re-reading of those theretofore given. In State v. Lubetkin, supra, this court unanimously approved the instruction when given in the first instance. We do not feel the giving of same on a requested rereading indicates possible coercion or undue importunity. Especially is this true when the jury deliberated over two hours thereafter before reaching a verdict. Nor had the jury been out such a great length of time nor was there any indication by the court that it would demand long deliberation which would in any way encourage any juror to surrender his judgment merely for the purpose of arriving at a verdict.

We in State v. Voeckell, supra, approved this instruction by a divided court under different circumstances. Therein the jury had been deliberating in excess of two days; the court apparently decided that there was a deadlock and without request the jury was called by the judge into court and was given the instruction. A verdict was reached within fifteen minutes thereafter. It is the personal opinion of the writer that the dissenting opinion of Justice UDALL is the sound solution under the circumstances of that case. The calling of the jury and giving the instruction without request after over two days' deliberation overemphasized the importance of reaching some verdict and indicated the trial judge was extremely anxious for agreement. The resulting verdict almost immediately was a strong indication some juror or jurors possibly surrendered conscientious opinions. It is not imperative that the instruction be given at all; but if it is to be given, the circumstances should be carefully considered to the end that there is no possibility the jury could infer that the court is indicating anxiety for or demanding some verdict or is imposing upon the jury the hardship of unreasonably lengthy deliberation.

■ Defendant's counsel filed a motion requesting the appointment of two qualified experts to examine the defendant with regard to his mental condition, supported by an affidavit of counsel that he believed the

defendant was unable to understand the proceedings against him and assist in his defense. The judge appointed Drs. McGrath and Bendheim to make such examination and directed them to file copies of their conclusions with the county attorney and defense counsel. The doctors examined the defendant and filed separate reports with the court to the effect that defendant was able to understand the nature of the proceedings against him and assist counsel in his defense. Copies were sent to respective counsel. No hearing was held nor ruling had concerning the defendant's present mental condition and the case went to trial about two months subsequent to the examinations and reports of the doctors. At no time did the defense request a hearing or object to going to trial without one.

Rule 250, subd. A, Rules of Criminal Procedure, 17 A.R.S., provides that if before or during the trial the court has reasonable ground to believe that defendant is insane or mentally defective to the extent that he is unable to understand the proceedings against him or assist in his defense, the court shall set a time for a hearing to determine defendant's mental condition and may appoint two disinterested and qualified experts to examine the defendant. The rule also provides that other evidence may be introduced by either party at the hearing.

█ It was a procedural error for the judge who appointed the doctors not to set the matter down for hearing as the rule provides. This error probably occurred by reason of the fact that the judge who appointed the experts was not the judge who tried the defendant. The purpose of the hearing is to give counsel, if they desire, an opportunity to cross-examine the experts or submit other evidence upon the issue. No such opportunity was requested by the defense and in view of the reports of the experts we may assume that defendant's counsel were satisfied to proceed to trial without formal hearing. At the trial Dr. Bendheim testified in harmony with his former report that defendant understood the nature of the proceedings and was capable of assisting in his defense. Also at the trial there was submitted some slight lay evidence concerning his mental condition but no expert evidence of insanity at the time of the commission of the offense. The court submitted the issue of defendant's insanity at the time the offense was committed to the jury but it found the defendant sane. We fail to see how the defendant could possibly have been prejudiced by the procedural error of not holding a formal hearing prior to trial. The defendant should not be allowed to sit by and permit the court to inadvertently commit the error and take advantage of it thereafter under the existing circumstances.

After thorough consideration we feel that the judgment and sentence must be affirmed.

PHELPS and JOHNSON, JJ., concur.

UDALL, C. J., and STRUCKMEYER, J., (specially concurring).

We agree defendant was accorded a fair and impartial trial, and that the evidence was such as to warrant the jury finding him guilty of murder in the first degree and fixing the penalty at death. We are also convinced that in the instant case the learned trial court exercised no coercion to force a verdict. We therefore concur in affirming the judgment of the lower court.

Inasmuch as the trial court gave the controversial instruction set forth haec verba in the foregoing opinion, and a few other trial judges are still using it, candor impels us to express our convictions thereon. However, it is not our purpose to rehash the arguments pro and con for the subject has been very fully covered in the majority and dissenting opinions in the Voeckell case, which are now supplemented by Justice WINDES' illuminating statements in the instant case. The legal principles enunciated in the Voeckell dissent are in accord with our deep-seated views. We do not claim that the giving of this instruction of itself constitutes reversible error, for its coercive effect is necessarily dependent upon the circumstances under which it is given and its resulting effect upon the jury. Considering all these imponderable factors it seems to us the giving of this instruction is so fraught with danger of coercion, that wisdom would dictate its use by the trial judges, should be rare indeed.

We are very pleased that the court's opinion makes it crystal clear *"It is not imperative that the instruction be given at all * * *."* We desire to serve notice that so long as we are members of the court we shall most carefully scrutinize the circumstances surrounding the giving of such instruction, and if it reasonably appears that the jury has been subjected thereby to duress or coercion we shall not hesitate to vote for a reversal.