342 P.2d 197

STATE of Arizona, Appellee,

v.

Albert D. THOMAS, Appellant.

No. 1112.

Supreme Court of Arizona.

July 20, 1959.

162

Flynn & Allen, Phoenix, for appellant.

Robert Morrison, Atty. Gen., James H. Green, Jr., Chief Asst. Atty. Gen., Lloyd C. Helm, County Atty., John G. Pidgeon, Deputy County Atty., Bisbee, for appellee.

J. SMITH GIBBONS, Superior Court Judge.

Albert D. Thomas, appellant, and his wife, Ellora Thomas, were jointly charged with murder in the first degree of one Frank Crane. The wife was acquitted and appellant, hereinafter called defendant, was convicted of manslaughter and sentence imposed. We consider that the only serious question to be determined is whether or not the learned trial court erred in giving what is herein called the Voeckell instruction, under the facts and circumstances shown by the record in this case.

It is undisputed that Frank Crane was shot and killed in a gun battle between decedent and his son, John Crane, on the one hand, and the defendant and his wife on the other, during which many shots were fired by both sides. There is a direct conflict on virtually every material fact in issue. The state asserts the first shots came ·from the Thomas truck and the defendant insists the Cranes started the shooting and he killed Frank Crane in self-defense. There is evidence supporting each of these claims from which reasonable persons might honestly disagree as to who was the aggressor.

After six days of trial the case was submitted to the jury at 3:20 p. m. on May 22, 1956. At 12:00 o'clock midnight the judge

called the jury into open court and the following proceedings were had:

"The Court: Let the record show the presence of the defendants and the attorneys and the jury, of course. Members of the jury, I asked the bailiff to bring you down. Who is the foreman, incidentally?

"The Foreman: I am, your honor.

"The Court: "Do you think you are going to be able to arrive at a verdict in this matter? A. We were wondering if we could—if it was permissible for the jury and you to meet.

"Q. No. A. Well, we didn't know. We were doubtful.

"Q. No. That would be very improper to do that. A. And if not, speaking for the jury, we feel that there is not enough evidence—

"Q. I don't want you to tell me. What I want to know is whether you think it is possible to arrive at a verdict. A. I don't.

"Q. Let me ask the rest of the jurors, is it the opinion of all of you that you cannot arrive at a verdict? (Several Jurors) A. Yes.

"Q. That seems to be the general concensus of opinion? Do you believe if I sent you back for further deliberation that you might possibly arrive at a verdict? A. Providing we had one law of the court read to us again.

"Q. Well, do you think it would help if the instructions were re-read to you? A. I do.

"Q. Do the rest of the jurors think it would help? (A Juror) A. No sir.

"Q. You don't think it would make any difference? A. No sir.

"Q. When I gave my instructions you probably noticed I had the court reporter record them on the machine, and it wouldn't be too much difficulty to have them played back to you. If you think it would be of some assistance I would be glad to do that. A. We could try it.

"(Foreman) I think it would be worth a trial."

"(Court) All right, Mr. Neff, can you set up your machine and do that."

"(The court's instructions were played back.)

"(Court) All right, members of the jury, I am going to give you further instructions in this case. You are further instructed, members of the jury, that although the verdict to which each juror agrees must, of course, be his own verdict and the result of his own convictions and not a mere acquiescence in the conclusion of his fellows, yet in order to bring twelve minds to a unanimous result you must examine the question submitted to you with candor and

with proper regard and deference to the opinions of each other.

"There is no reason to suppose that this case will ever be submitted to twelve more intelligent, more impartial or more competent jurors to decide it, or that more or clearer evidence will be produced on one side or the other. With this in view it is your duty to decide this case if you can without yielding your conscientious convictions. In conferring together you ought to pay proper attention to each other's opinion and listen with a disposition to be convinced by other's arguments, and on the other hand if a larger number of your panel are for conviction, a dissenting juror should consider whether a doubt in his own mind is a reasonable one which makes no impression on the minds of so many jurors equally honest, equally intelligent with himself who have heard the same evidence, with the same oath; and if on the other hand the majority are for the defendant, the minority should ask themselves whether they may not and ought to reasonably doubt seriously the correctness of a judgment which is not concurred in by most of those with whom they are associated and distrust the weight and sufficiency of that evidence which fails to carry conviction to the minds of their fellow jurors."

At 12:55 a. m. the jury retired for further deliberations; at 2:30 a. m. the jurors requested information regarding the verdicts submitted, and were informed by the court that they should separately decide the guilt or innocence of each defendant.

It is reasonable to assume from this record that at least a part of the time between 12:55 a. m when deliberations were resumed upon giving the Voeckell instruction, and 2:30 a. m., when they requested and received information as to the permissible forms of verdicts, was consumed in a discussion of this particular problem. The announced inability to arrive at a verdict was thereupon resolved and agreement reached in a comparatively short time after such instruction was given.

■ The defendant assigns as error the giving of this instruction at the time and under the circumstances of the case, considering the gravity of the charge, the nature of the defense, the complexity of the issues, the length of time the jury had been deliberating, and failure of the court to advise that they could retire for the night and resume deliberations the following day. The state on the other hand points out that the instruction is proper and has been approved by this court in State v. Voeckell, 69 Ariz. 145, 210 P.2d 972; State v. Lubetkin, 78 Ariz. 91, 276 P.2d 520, and should be upheld. The state's contention that the defendant waived and made no

valid objection thereto is without merit in this case.

Subsequent to the filing of this appeal we again considered and approved in principle this controversial instruction in State v. Craft, 85 Ariz. 143, 333 P.2d 728. Justice Windes, speaking in a unanimous opinion, specially concurred in by Justice Udall and Justice Struckmeyer, said, 333 P.2d at page 731:

"There may be circumstances that would render this instruction invalid. * * *.

\* \* \* \* \* \*

"\* \* \* It is not imperative that the instruction be given at all; but if it is to be given, the circumstances should be carefully considered to the end that there is no possibility the jury could infer that the court is indicating anxiety for or demanding some verdict or is imposing upon the jury the hardship of unreasonably lengthy deliberation."

The pitfalls and dangers to be avoided and the safeguards to be observed in giving this instruction are clearly outlined by Justice Windes in the Craft case and the dissenting opinion of Justice Udall in the Voeckell case. This instruction, in the light of the surrounding circumstances under which it is given, should not overemphasize the importance of an agreement, suggest that any juror surrender his independent judgment, or say or do anything from which the jury could possibly infer that the court is indicating anxiety for or demanding some verdict, or subjecting the jury to the hardships of long deliberations.

The facts in the instant case show that the jury, after a long day of trial and deliberation, were summoned to and interrogated in open court at midnight as to the possibility of arriving at a verdict. Their request to confer with the court, the foreman's statement "We feel that there is not enough evidence \* \* \*" (interrupted by the Judge), statements they could not agree, the court's suggestion to repeat the instructions and the playing of the record of the instructions formerly given, did in our opinion create an atmosphere of receptivity in the minds of the jury to any suggestion that would assist them in solving the problem at hand. Without request or notice the court gave the Voeckell instruction and concluded with this remark: *"With this instruction \* \* \* you may may retire \* \* \* for further deliberations."* (Emphasis supplied.)

In the hour and thirty-five minutes that followed it would appear that the issue upon which information was requested at 2:30 a. m. was the main bone of contention during that time. This matter being explained by the court only ten minutes was required to reach their verdict. We are convinced that the giving of the Voeckell

instruction under the salient facts recited could and did infer to the jury the court's anxiety for it to arrive at some verdict.

Defendant's request that this court reconsider the Voeckell instruction and adopt the view advanced by Justice Udall in his dissenting opinion thereto has received consideration by us. We readily concede that a close reading and study thereof, sentence by sentence, does not reveal any misstatement of the law. Yet it now appears that the old adage referred to by Justice Udall—"proof of the pudding is in the eating"—aptly applies. [69 Ariz. 145, 210 P.2d 980.] This instruction has been before us four times. When and wherever its use is called into question it must stand or fall upon the facts and circumstances of each particular case. It has given, and we believe each use will give us, harassment and distress in the administration of justice. No rule of thumb can circumscribe definite bounds of when and where, or under what circumstances it should be given or refused.

It now appears that its continued use will result in an endless chain of decisions, each link thereof tempered and forged with varying facts and circumstances and welded with ever-changing personalities of the appellate court. This is not in keeping with sound justice and the preservation of human liberties and security. We are convinced that the evils far outweigh the benefits, and decree that its use shall no longer be tolerated and approved by this court.

Reversed and remanded with direction to grant defendant a new trial.

PHELPS, C. J., and STRUCKMEYER, UDALL and BERNSTEIN, JJ., concur.

NOTE: Justice J. MERCER JOHNSON being disqualified, Honorable J. SMITH GIBBONS, Superior Court Judge of Apache County, was called to sit in his stead, and participated in the determination of this cause.