Irven GREEN and Robert Benjamin Smith, Appellants,

v.

UNITED STATES of America, Appellee.

Arnold Jack JOHNSON, Appellant,

v.

UNITED STATES of America, Appellee.

Nos. 18852, 18928.

United States Court of Appeals Fifth Circuit.

Nov. 2, 1962.

William F. Walsh, Houston, Tex., Zach H. Douglas, Jacksonville, Fla., for Green and Smith.

William Glenn Cone, Jacksonville, Fla., for Johnson.

John L. Briggs and Emmett A. Moran, Asst. U. S. Attys., Jacksonville, Fla., Edward F. Boardman, U. S. Atty., S. D. Fla. (Henry C. Stockell, Jr., Regional Counsel, William P. Crewe, Asst. Regional Counsel, John L. Fowler, Senior Atty., Internal Revenue Service, of counsel, on the brief), for appellee the United States.

Before BROWN, WISDOM and BELL, Circuit Judges.

WISDOM, Circuit Judge.

This is still another case in which the Allen or "dynamite" charge is the focal point of the appeal. We reverse and remand.

The appeals in these cases, here consolidated for decision, present identical questions of law arising from the conviction of the defendants for conspiracy to violate the Internal Revenue Code by conducting moonshining and bootlegging operations. The defendants, Green, Johnson, and Smith, along with seven others, were indicted in the *Northern* District of Florida. The indictment alleged twenty-three overt acts in furtherance of the conspiracy, twenty-two of which took place in the *Southern* District of Florida. Although the last act was allegedly committed in the *Northern* District of Florida, where the indictment was brought, the appellant Smith was not charged with participation in it. Upon application of eight of the defendants, but not including Smith, the district judge ordered the case transferred to the Southern District as to *all* the defendants.

At the close of the trial, the trial judge refused to charge the jury that in order to convict any defendant, the jury must find beyond a reasonable doubt that the act alleged to have taken place in the Northern District of Florida was in fact committed and that the defendant participated in it. Finally, and of great importance in this case, before the jury retired to consider its verdict, the trial court gave this version of the Allen charge:

"Each juror is to act upon his own judgment and if he entertains a reasonable doubt, it is not required that he surrender his conviction and render a verdict merely because the other jurors entertain no such doubt. Sometimes the jurors, there is a minority one way and a majority the other way and in that event, I think it is my duty to tell you it is the duty of the minority to listen to the argument of the majority with some distrust of their own judgment because the rule is that the majority will have better judgment than the mere minority and more than that, they are just as honest and just as sincere so that each juror if he is in the minority should heed the argument of the majority with some doubt as to his correct position. * * * *"

Upon findings of guilty against these three defendants, they prosecuted this appeal.

## I.

▮▮▮ The Allen or "dynamite" charge [1] is designed to blast loose a deadlocked jury. There is small, if any, justification for its use.[2] Nevertheless, an old decision of the Supreme Court has upheld the charge as a reminder to jurors that "they should listen, with a disposition to be convinced, to each other's argument." Allen v. United States, 1896, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528. This is the outermost limit of its permissible use. There is no justification whatever for its coercive use. The jury system rests in good part on the assumption that the jurors should deliberate patiently and long, if necessary, and arrive at a verdict—if, but only if, they can do so conscientiously. It is improper for the court to interfere with the jury by pressuring a minority of the jurors to sacrifice their conscientious scruples for the sake of reaching agreement.[3]

1. In Colorado it is called the "third degree instruction"; in New Mexico the "shotgun instruction". Leech v. People, 1947, 112 Colo. 120, 146 P.2d 346, 347; State v. Nelson, 1958, 63 N.M. 428, 321 P.2d 202, 204.

2. The Arizona Supreme Court has had enough of the Allen charge. In State v. Thomas, 1959, 86 Ariz. 161, 342 P.2d 197, 200, the court said:

"This instruction has been before us four times. When and wherever its use is called into question it must stand or fall upon the facts and circumstances of each particular case. It has given, and we believe each use will give us, harassment and distress in the administration of justice. No rule of thumb can circumscribe definite bounds of when and where, or under what circumstances it should be given or refused.

"It now appears that its continued use will result in an endless chain of decisions, each link thereof tempered and forged with varying facts and circumstances and welded with ever-changing personalities of the appellate court. This is not in keeping with sound justice and the preservation of human liberties and security. We are convinced that the evils far outweigh the benefits, and decree that its use shall no longer be tolerated and approved by this court."

3. The organ of the Court agrees with the views expressed by Judge Brown, dissenting in Huffman v. United States, 5 Cir., 1962, 297 F.2d 754, 759:

"The fact is that in many phases of criminal law we have come a long, long way since 1896. There is no longer any place for the Allen charge. For good reasons it has acquired its descriptive as the 'dynamite charge' (variously called the 'nitroglycerin charge') at the hands of the Bar. This is an intrusion by the Judge into the exclusive domain of fact finding by the jury. It is nonetheless so merely because the Judge does not indicate which of two decisions must be reached.

"What is worse, it is becoming more and more commonplace. Nearly every hard-fought criminal case coming to this Court reveals the Judge sooner or later giving this charge or some embellishment of it. *Too often, as in these two cases, it was but a matter of a few hours after the jury had retired to deliberate.* And not infrequently, as we were led to believe on oral argument in both of these cases, it occurs with the last jury in the last case at that Division point for that particular term. To the other pressures which are irrelevant is the other and natural one of a personal consideration for the Judge who, like jurors, also wants to go home. The charge pointedly reminds them that to hold out disrupts the plans of all.

"I think a mistrial from a hung jury is a safeguard to liberty. In many areas it is the sole means by which one or a few may stand out against an overwhelming contemporary public sentiment. Nothing should interfere with its exercise. *In the final analysis the Allen charge itself does not make sense. All it may rightfully say is that there is a duty to consider the views of others but that a conscientious person has finally the right and duty to stand by conscience. If it says that and nothing more it is a superfluous lecture in citizenship. If it says more to declare that there is a duty to decide, it is legally incorrect as an interference with that rightful independence.*

"*The time has come, I think, to forbid this practice. Like the silver platter, this is too dear to keep. The cost in fundamental fairness is too great.*" (emphasis added)

5 Wharton's Criminal Law and Procedure § 2116 (Anderson's Ed. 1957); Bowers, The Judicial Discretion of Trial

In Allen v. United States, 1896, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528, the trial judge charged:

"that in a large proportion of cases absolute certainty could not be expected; that although the verdict must be the verdict of each individual juror, and not a mere acquiescence in the conclusion of his fellows, yet they should examine the question submitted with candor and with a proper regard and deference to the opinions of each other; that it was their duty to decide the case if they could conscientiously do so; that they should listen, with a disposition to be convinced, to each others argument; that, if much the larger number were for conviction, a dissenting juror should consider whether his doubt was a reasonable one which made no impression upon the minds of so many men, equally honest, equally intelligent with himself. If, upon the other hand, the majority was for acquittal, the minority ought to ask themselves whether they might not reasonably doubt the correctness of a judgment which was not concurred in by the majority."

In Powell v. United States, 5 Cir., 1962, 297 F.2d 318, we said that

"It is implicit in the decisions of the Supreme Court dealing with the Allen case, e. g., Burton v. United States, 196 U.S. 283, 25 S.Ct. 243, 49 L.Ed. 482, and Brasfield v. United States, 1926, 272 U.S. 448, 47 S.Ct. 135, [71 L.Ed. 345] that the Fourth Circuit was correct in its recent holding [in United States v. Rogers, 1961, 289 F.2d 433, 435–37] 'that the Allen charge, itself, approaches ultimate permissible limits * * *' in handling situations similar to that facing the court below."

This Court then went on to hold that a trial judge's addition to the Allen charge

of an imputation of stubbornness to the jurors opposing the majority went "beyond the permissible limits to which a court may go in its endeavor to influence the jury towards the rendition of a verdict." Accord, Kesley v. United States, 5 Cir., 1931, 47 F.2d 453. Here, the instruction that

"* * * it is the duty of the minority to listen to the argument of the majority with some distrust of their own judgment because the rule is that the majority will have better judgment than the mere minority * * *"

far exceeds permissible limits. Mark Twain may have been exaggerating it when he said, "Whenever you find that you are on the side of the majority, it is time to reform," but there is no legal rule that the majority of jurors have better judgment than the minority. There is no legal rule that the minority, merely because they are in the minority, should distrust their own judgment. Such an instruction leads a jury to believe that it is the duty of the dissenting jurors to accede to the majority's views without full discussion and without regard to the historical right of a single juror to stick to his conscientious opinions of the case.

None of the "dynamite" charges approved by this Court in criminal cases supports the charge delivered by the court below. The instruction to the jury permitted in Sikes v. United States, 5 Cir., 1960, 279 F.2d 561, was an almost verbatim rendition of the original Allen charge, while the charge in Weathers v. United States, 5 Cir., 1952, 126 F.2d 118, "was ameliorated by such expressions as: 'No juror is expected to yield a conscientious conviction he may have upon the evidence. * * * It is your duty, gentlemen of the jury, to agree unless it does violence to your conscience.'" Similarly, in Shipley v. United States, 5 Cir., 1922, 281 F. 134, 136, we pointed out that "the additional charge of the court to the jury as to their duty in endeavor-

Courts 377 (1931); Orfield, Criminal Procedure from Arrest to Appeal 467–68 (1947). See Note—Instruction by Trial

Court Coercing Agreement Among Jurors, 34 Tul.L.Rev. 214 (1959).

ing to reach a verdict fully admonished each juror of his duty, not to agree to any verdict which did not accord with his conscientious convictions * * *." Here, each juror, far from being "fully admonished * * * not to agree to any verdict which did not accord with his conscientious convictions," was informed that he had a duty to "heed the argument of the majority," which "will have better judgment than the mere minority."

In this case the dynamite exploded before there was any reason to think that blasting was necessary: the trial judge gave the charge before the jury retired. Some courts have held that when the Allen charge is incorporated in the initial instructions its coercive effect is minimized. Nick v. United States, 8 Cir., 1941, 122 F.2d 660, 674; State v. Doan, 1947, 225 Minn. 193, 30 N.W.2d 539. Other courts make no such distinction. People v. Chivas, 1948, 322 Mich. 384, 34 N.W. 22; State v. Thomas, 1959, 86 Ariz. 161, 342 P.2d 197. In this case we see no reason to draw a distinction. The vice in the charge was the court's interference with the jury function. No matter when the charge was made, it gave the jury false notions of the validity and force of majority opinion; it tended to limit full and free discussion in the jury room; it prejudiced the right of an accused to a hung jury and a mistrial by tending to stifle the dissenting voices of minority jurors.

We hold, therefore, that the charge goes beyond the permissible limits of the Allen charge, as that charge has been construed by this Court.

## II.

■■ This case presents an unusual situation with regard to venue. Had the defendants been indicted in the *Southern* District of Florida and had no mention been made of the twenty-third act, committed in the Northern District, the trial judge's instruction to the jury that " * * * it isn't necessary for the Government to prove except one overt act. * * * If you believe there is a conspiracy, then it requires one overt act,"

would have been correct. The indictment was returned, however, in the *Northern* District of Florida. In order for there to have been a valid conviction, venue must be shown to have existed in the district where the prosecution was commenced.

Congress has provided that " * * * any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed." 18 U.S. C.A. § 3237. There is no indication that the words "may be inquired of" are to be given any less weight than "prosecuted in." Unless, therefore, at least one overt act by a defendant was committed in the Northern District of Florida, the court lacked venue.

This is no pedantic, justice-defeating technicality. The dangers of abuse are manifold if the Government can obtain an indictment for conspiracy in a district other than the district where the offense was actually committed merely by alleging that one act, *which need never be proved,* was committed in that district. Surely the Government should not be able to procure an indictment in Hawaii for an offense committed entirely in Alaska without having to prove to the satisfaction of a jury that at least one act was done in the district of the indictment. There is grave danger of injustice where, as in the present case, one defendant was not even alleged to have participated in the one act which occurred in the district where the indictment against him and nine others was returned.

"Questions of venue in criminal cases * * * are not merely matters of formal legal procedure. They raise deep issues of public policy in the light of which legislation must be construed. If an enactment of Congress equally permits the underlying spirit of the constitutional concern for trial in the vicinage to be respected rather than to be disrespected, construction should go in the direction of constitutional policy even

though not commanded by it." United States v. Johnson, 1944, 323 U.S. 273, 276, 65 S.Ct. 249, 89 L.Ed. 236.

We hold that the trial court erred in failing to submit the question of venue to the jury.

The Court has considered all of the other errors assigned by the appellant. We find that they have no merit.

The judgment is reversed and the case remanded.