NUMBER 13-05-325-CR

 

                         COURT OF APPEALS

 

                     THIRTEENTH
DISTRICT OF TEXAS

 

                         CORPUS
CHRISTI - EDINBURG  

                                                                                                                     


 

GARY LEE MORENO,                                                           
Appellant,

 

v.

 

THE STATE OF TEXAS,                                                                   Appellee.

                                                                                                                                      


On appeal from the 156th District
Court of Bee County, Texas.

                                                                                                                      


MEMORANDUM OPINION

 

       Before
Chief Justice Valdez and Justices Rodriguez and Castillo

                      Memorandum
Opinion by Chief Justice Valdez

 








Appellant, Gary Lee Moreno, was convicted of
burglary of a habitation.  See Tex. Pen.
Code Ann. _ 30.02 (Vernon 2005).  The trial
court sentenced him to fifteen years= imprisonment, assessed a $500 fine, and ordered him
to pay $540 in restitution.  The trial
court certified that this was not a plea bargain case and appellant has the
right of appeal.  See Tex. R. App. P. 25.2(a)(2) (Vernon 2006).  By six issues, appellant contends that: (1)
the trial court erred by not permitting defense counsel to cross-examine the
state=s witness in front of the jury about a DWI arrest;
(2) the evidence is factually insufficient to sustain the conviction; (3) the
evidence is legally insufficient to sustain the conviction; (4) the court erred
in not instructing the jury at the adjudication stage of the trial on the Anear certitude@ standard of reasonable doubt; (5) the trial court=s charge to the jury over-emphasized the importance
of reaching a verdict; and (6) the trial court failed to charge the jury on the
appellant=s alibi defense. 
For the following reasons, we affirm the trial court=s judgment.

I.  BACKGROUND

Appellant lived next door to the burglary victim,
Deanna Longoria, on the second floor of a four-unit apartment building.  Longoria testified that on October 25, 2003,
she and her children were picked up by her mother and spent the night away from
her apartment.  The next morning, October
26, 2003, Longoria returned to the apartment and found the door open and some
of her belongings missing.  Longoria
called the police, and one of the responding officers photographed the front
door, which appeared to have been kicked open.[1]  Longoria told the officers she suspected her
neighbors, appellant and his girlfriend Carrie Joe Suniga, were
responsible.  Officer Trevino, a
lieutenant with the Beeville Police Department and the first officer on the
scene, went to appellant=s apartment. 
Appellant answered the door and allowed Officer Trevino to search the
apartment.  The officer found no stolen
items.  The officer did not search the
adjacent storage closet or appellant=s car.








Sylvia Herrera, Longoria=s neighbor, testified that two or three weeks after
the burglary, Longoria told her that she had been burglarized.[2]  Herrera testified that she then informed
Longoria that around 2:30 a.m. on the morning of the burglary she had been
sitting outside drinking beer and heard a bang from Longoria=s apartment.[3]  When Herrera looked over, she saw who she
believed to be appellant and his girlfriend carrying items from Longoria=s apartment into their own.   Herrera later testified that she had known
appellant for fifteen or sixteen years and the girlfriend for five or six
years, so she immediately recognized them. 
Herrera did not call the police because she believed that Longoria was
home at the time, and as Herrera later testified, she did not believe that
appellant was robbing the apartment. 
After this conversation, Longoria went to the police with the information.  Herrera then filed a statement with the
police of the incident.[4]  Appellant was subsequently arrested and
charged with burglary of a habitation. 
Appellant pleaded not guilty to the offense.  The jury found appellant guilty, and the
trial court sentenced him to fifteen years= imprisonment. 
This appeal ensued.

II.  ANALYSIS 

A. Cross-Examination








By his first issue, appellant contends that the
trial court erred in not permitting defense counsel to cross-examine Silvia
Herrera, in front of the jury, about a recent DWI arrest.  When appellant made an effort to question
Herrera regarding the DWI arrest, which happened the Sunday before trial, the
State objected.  The trial court
sustained the objection, but made a bill of exception to allow appellant to
cross-examine Herrera about the DWI arrest outside of the jury=s presence. 
Herrera testified that she had two prior DWI convictions, was arrested
for DWI the Sunday before trial, but she had not spoken to anyone from the
district attorney=s office about a plea agreement in return for
testifying.  Assistant District Attorney
Mark Pantano denied that he or the District Attorney knew of Herrera=s arrest. The trial court again sustained the State=s objection. 

The Confrontation Clause of the Sixth Amendment to
the United States Constitution guarantees an accused=s right Ato be confronted with the witness against him.@  U.S. Const. amend. VI; Tex. Const.
art. I, _ 10; Delaware v. Van Arsdall, 475 U.S. 673, 678 (1986); Carroll
v. State, 916 S.W.2d 494, 496-97 (Tex. Crim. App. 1996).  The purpose of this right is to allow a
defendant to cross-examine a witness, the principal means of testing a witness=s credibility. 
Shelby v. State, 819 S.W.2d 544, 546 (Tex. Crim. App. 1991) (en
banc).  

A defendant may cross-examine a witness on any
subject Areasonably calculated to expose a motive, bias, or
interest for the witness to testify.@  Carroll,
916 S.W.2d at 497; Miller v. State, 741 S.W.2d 382, 389 (Tex. Crim. App.
1987) (en banc) (holding that evidence that a witness who testifies against the
accused has pending criminal charges or is awaiting sentencing is always
admissible against him to show possible motive for testifying for the State and
against the accused).  Cross-examination Aallows facts to be brought out tending to discredit
the witness by showing his testimony in chief was untrue or biased.@  Alford v.
United States, 282 U.S. 687, 691-92 (1931); Carroll, 916 S.W.2d at
497.   AThe
exposure of a witness= motivation in testifying is a proper and important
function of the constitutionally protected right of cross-examination.@  Davis v.
Alaska, 415 U.S. 308, 316-17 (1974); Maxwell v. State, 48 S.W.3d
196, 199 (Tex. Crim. App. 2001). 








The appropriate scope of cross-examination includes Aall facts and circumstances, which when tested by
human experience, tend to show that a witness may shade his testimony for the
purpose of helping to establish one side of the cause only.@  Carroll,
916 S.W.2d at 497-98 (quoting Jackson v. State, 482 S.W.2d 864, 868
(Tex. Crim. App. 1972)).  Evidence
of  Aunadjudicated crimes could be admissible to show a
witness=s bias or interest in a particular case.@  Moreno v.
State, 22 S.W.3d 482, 485-86 (Tex. Crim. App. 1999).  Evidence that the witness is subject to a
criminal charge, or is on probation, can be used to show bias or interest.  Id. 
The jury is Aentitled to have the benefit of the defense theory
before them so that they could make an informed judgment as to the weight to
place on testimony which provided >a crucial link in the proof . . . of [the defendant=s] act.=@  Davis,
415 U.S. at 317 (quoting Douglas v. Alabama, 380 U.S. 415, 419
(1965)).  The trial court, however, may
limit the scope of cross-examination to avoid harassment, prejudice, confusion
of the issues, endangering the witness, and injection of cumulative or collateral
evidence.  Van Arsdall, 475 U.S.
at 679.  

The proponent of evidence to show bias or interest
must show that the evidence is relevant. 
Carpenter v. State, 979 S.W.2d 633, 634 (Tex. Crim. App.
1998).  The proponent does this by
showing that a nexus, or causal connection, exists between the witness=s testimony and the witness=s potential motive to testify for the other
party.  Woods v. State, 152 S.W.3d
105, 111 (Tex. Crim. App. 2004).  Texas
courts have found a nexus where the witness had been indicted or is on
probation.  Id.; Maxwell,
48 S.W.3d at 199; Evans v. State, 519 S.W.2d 868, 873 (Tex. Crim. App.
1975).   








In Evans, the court of criminal appeals found
a Confrontation Clause violation in the exclusion of evidence tending to show
the State=s witness was under indictment for sodomy in the
same court in which the defendants= indictments were pending.  Evans, 519 S.W.2d at 871.  Evidence brought out in a bill of exception
showed that each time the defendants= trial was set, the witness=s trial was also scheduled to follow; and each time
the defendants= trial was reset, the witness=s trial was reset as well.  Id. 
Additionally, it was shown on cross-examination that circumstantial
evidence could possibly link the State=s witness to the crime.  Id. at 873.  The combined facts of the witness=s vulnerable position as indictee, and possible
concern that he might be a suspect in the offense, provided the basis for
finding error in the court=s refusal to allow cross-examination for bias,
interest, and motive.  Id.             

In Maxwell, the court of criminal appeals
found a Confrontation Clause violation in the refusal to allow defendant to
cross-examine a witness concerning his deferred adjudication and subsequent
conviction for drug possession.  Maxwell,
48 S.W.3d at 200.  The defendant in Maxwell
was placed on deferred adjudication May 1, 1996, and was convicted of
marijuana possession July 7, 1998 while on deferred adjudication.  Id. 
At the time he was a witness in October 1998, his deferred adjudication
status was subject to adjudication, and he was facing a possible sentence
beyond the limits of his probation.  Id.  The evidence was therefore relevant in
showing bias or interest of the witness in helping the State.  Id. at 199.  

In Woods, the court of criminal appeals
distinguished Maxwell, finding that it was proper for the trial court to
refuse to allow defendant to cross-examine a witness about his prison sentence
and prospects for parole when the witness stated that he was ineligible for
parole, and had no expectation that he would be rewarded for testifying for the
State.  Woods, 152 S.W.3d at
112.  Because there was no indication
that the witness expected to be rewarded for favorable testimony, appellant=s offer of proof did not establish a nexus between
the testimony and a motive to testify in order to reduce the prison
sentence.  Id. 








We find the present case is more like Woods than
Maxwell or Evans because there is no nexus between the testimony
and the witness=s potential motive to testify for the State.  The trial court made a bill of exception
allowing appellant to cross-examine Herrera outside of the jury=s presence about the DWI arrest.  Herrera testified that she had two prior DWI
convictions, was again arrested for DWI the Sunday before trial, and did not
know if a third conviction would be a felony DWI.  Upon redirect examination by the State, Herrera
testified that she had not yet been indicted, she had not spoken to anyone
about a plea agreement, nor had she been given any promises regarding the DWI
arrest.  

Herrera filed a witness statement on November 17,
2003 stating that she saw appellant burglarize Longoria=s apartment. 
Herrera was subpoenaed on September 2, 2004.  Herrera=s arrest for DWI occurred on Sunday, only a few days
before the Wednesday, February 9, 2005 trial. 
There was no indication that Herrera expected to be rewarded for
testimony favorable to the State or punished for unfavorable testimony.  See Woods, 152 S.W.3d at 112.  Appellant=s
offer of proof did not establish  a nexus
between Herrera=s testimony and any possible motive for her to
testify for the State.  See id.
at 111.  Accordingly, we overrule
appellant=s first issue.                                         

B. Legal and Factual Sufficiency








By his second and third issues, appellant contends
the evidence is factually and legally insufficient to sustain a conviction for
burglary of a habitation.  In a legal
sufficiency review, we consider all of the evidence in the light most favorable
to the verdict to determine whether any rational trier of fact could have found
the essential elements of the offense beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319
(1979); Vodochodsky v. State, 158 S.W.3d 502, 509 (Tex. Crim. App.
2005).  The standard of review is
applicable in both direct and circumstantial evidence cases.  Burden v. State, 55 S.W.3d 608, 613
(Tex. Crim. App. 2001).  We are not fact
finders; our role is that of a due process safeguard, ensuring only the
rationality of the trier of fact=s finding of the essential elements of the offense
beyond a reasonable doubt.  See Moreno
v. State, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988).

In a factual sufficiency review, we view the
evidence in a neutral light and will set aside a verdict only if the evidence
supporting the verdict is so weak that the verdict is clearly wrong and
manifestly unjust, or the contrary evidence is so strong that the standard of
proof beyond a reasonable doubt could not have been met.  Escamilla v. State, 143 S.W.3d 814,
817 (Tex. Crim. App. 2004) (citing Zuniga v. State, 144 S.W.3d 477,
484-85 (Tex. Crim. App. 2004)).  A
clearly wrong or unjust verdict occurs when the jury=s finding Ashocks the conscience@ or Aclearly demonstrates bias.@  Santellan
v. State, 939 S.W.2d 155, 164-65 (Tex. Crim. App. 1997). 








In a criminal conviction, sufficiency of the
evidence is determined by the elements of the crime as defined by the
hypothetically correct jury charge.  Malik
v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).  The correct charge Awould be one that accurately sets out the law, is
authorized by the indictment, does not necessarily increase the State=s burden of proof or unnecessarily restrict the
State=s theories of liability, and adequately describes
the particular offense for which the defendant was tried.@  Id.                Appellant
contends the evidence is legally insufficient to support a conviction because:
(1) Officer Trevino found no stolen goods in appellant=s apartment; (2) appellant=s sister provided an alibi for appellant; and (3)
Herrera=s observations were erroneous because she was
drinking and was too far away from the victim=s
apartment.  To find the evidence legally
sufficient to sustain a conviction for burglary of a habitation, the evidence
must demonstrate that: (1) appellant entered the habitation; (2) without the
effective consent of the owner; (3) in order to commit or attempt to commit a
felony, theft, or assault.  See Tex. Pen.
Code Ann. _ 30.02.  

Herrera testified that she saw appellant enter the
victim=s apartment on the morning of the burglary and
remove items from the apartment. 
Herrera, the victim Deanna Longoria, and Officer Trevino all testified
that the apartment was well-lit, and the distance was not so far that Herrera
could not have recognized appellant. 
Longoria also testified that she did not give appellant consent to enter
her apartment.           

Appellant=s sister gave testimony that appellant was with her
the morning of the burglary.   It is
within the jury=s exclusive province to resolve conflicts in the
evidence by making determinations of the credibility of the witnesses.  See Heiselbetz v. State, 906
S.W.2d 500, 504 (Tex. Crim. App. 1995). 
A verdict is not manifestly unjust merely because it resolved
conflicting views in favor of the State. 
Cain v. State, 958 S.W.2d 404, 410 (Tex. Crim. App. 1997).        

Based upon Herrera=s
testimony that she witnessed appellant enter Longoria=s apartment and remove items, we conclude that a
rational trier of fact could have found beyond a reasonable doubt that
appellant entered a habitation to commit theft without the owner=s consent. 
Examining the evidence in the light most favorable to the jury=s verdict, we hold that the evidence is legally
sufficient to support the jury=s verdict.  See
Jackson, 443 U.S. at 319; Vodochodsky, 158 S.W.3d at 509.  








Our review of the record as a whole, with
consideration given to all of the evidenceB both for and against the jury=s findingB does not reveal any evidence that would cause us to
conclude that the proof of guilt is so obviously weak or is otherwise so
greatly outweighed by contrary proof as to render appellant=s conviction clearly wrong or manifestly
unjust.  See Escamilla, 143
S.W.3d at 817.  Therefore, we hold that
the evidence is factually sufficient to support the jury=s verdict.  We
overrule appellant=s second and third issues.           

C. Reasonable Doubt

By his fourth issue, appellant contends the
trial court erred by failing to instruct the jury at the trial=s adjudication stage on the Anear certitude@ standard of reasonable doubt.  In support of the contention, appellant cites
Victor v. Nebraska and Jackson v. Virginia as authority that the
trial court must instruct the jury to vote not guilty if they have not reached
a subjective state of near certitude as to appellant=s guilt.  See
Victor, 511 U.S. 1, 14 (1994); Jackson, 443 U.S. at 315.     








Texas adopted the Jackson reasoning regarding
reasonable doubt instructions in Geesa v. State, 820 S.W.2d 154, 165
(Tex. Crim. App. 1991), requiring an instruction on the definition of
reasonable doubt, not the Anear certitude@ standard that appellant advances.  The court of criminal appeals, however,
subsequently overruled this requirement because the instruction was redundant
and confusing.  Paulson v. State,
28 S.W.3d 570, 573 (Tex. Crim. App. 2000). 
The Paulson court concluded Athat the better practice is to give no definition of
reasonable doubt at all to the jury.@  Id.  This is the standard Texas courts must
follow.  See Hankins v. State,
132 S.W.3d 380, 384 (Tex. Crim. App. 2004). 
ASo long as the court instructs the jury on the
necessity that the defendant=s guilt be proved beyond a reasonable doubt, the
Constitution does not require that any particular form of words be used in
advising the jury of the government=s burden of proof.@  Paulson, 28 S.W.3d at 573 (citing Victor,
511 U.S. at 5).

The trial court in the present case instructed the
jury in the jury charge that they must find appellant guilty, if proven  beyond a reasonable doubt, and not guilty
otherwise.[5]  Accordingly, we hold that the trial court
instructed the jury consistently with the Paulson mandate, and thus, did
not err in failing to instruct the jury on the Anear
certitude@ standard of reasonable doubt.  We overrule appellant=s fourth issue. 

D. Jury Charge

By his fifth issue, appellant contends that the
trial court=s charge to the jury over-emphasized the importance
of reaching a verdict.[6]  In support of his argument, appellant cites Womack
v. State, 35 S.W.2d 723 (Tex. Crim. App. 1931) and Green v. United
States, 309 F.2d 852 (5th Cir. 1962). 









Appellant did not object to the alleged error in the
charge as required by article 36.14 of the Texas Code of Criminal
Procedure.  Tex. Code Crim. Proc.
Ann. art. 36.14 (Vernon Supp.
2005).  Any objections to the charge must
be made at trial.  Tex. Code
Crim. Proc. Ann. art.
36.19 (Vernon Supp. 2005).  Thus, only
fundamental error in the court=s charge will be considered on appeal.  York v. State, 566 S.W.2d 936, 937
(1978).  We may not reverse a conviction
for any error or omission in the jury charge unless such error or omission Awas calculated to injure the rights of the
defendant, or unless it appears from the record that the defendant has not had
a fair and impartial trial.@  Tex. Code
Crim. Proc. Ann. art.
36.19.  In determining whether
fundamental error is present in a court=s charge, it is proper to view the charge as a
whole.  White v. State, 610 S.W.2d
504, 507 (Tex. Crim. App. 1981).    

The giving of admonitory instructions is within the
sound discretion of the trial court.  York,
566 S.W.2d at 938.  This case is
distinguishable from Womack and Green in that there is no
indication that the trial court sought to influence the minority of jurors to
reconsider their verdict.  Viewing the
charge as a whole, we conclude that the trial court did not commit error, let alone
fundamental error, in instructing the jury about selecting a presiding juror
and the presiding juror=s responsibility to certify a unanimous
verdict.  We overrule appellant=s fifth issue.

 

E. Alibi
Defense 

 

By his sixth
issue, appellant contends that the trial court erred by failing to charge the
jury on appellant=s alibi defense.  Alibi constitutes no more than a negation of
an essential element of the offenseB that defendant
committed the offense at the alleged time and locationB an essential
element of the State=s burden of
proof.  Giesberg v. State, 984
S.W.2d 245, 246-50 (Tex. Crim. App. 1998). 
Because appellant=s alibi
defense, in this case, involved nothing more than complete negation of his
involvement in the burglary, we conclude appellant is not entitled to an
instruction on alibi even where the issue is raised by the evidence.  Id. at 251.  We overrule appellant=s sixth issue.

We affirm the
trial court=s judgment.

_______________________

ROGELIO VALDEZ

Chief Justice

 

Do not publish.                                              

Tex. R. App. P. 47.2(b).

 

Memorandum
Opinion delivered and 

filed this the
29th day of June, 2006.











[1] The photograph was admitted as
State=s exhibit 3.  Officer Trevino testified that he observed a
partial footprint on the door.





[2] The record is unclear exactly how
much time elapsed between the time of the burglary and the time Longoria spoke
with Herrera. 





[3] Officer Trevino testified that the
apartment was approximately 300 feet away from Herrera=s house. 





[4] The record from the punishment
hearing indicates Herrera gave a witness statement on November 17, 2003.





[5] The jury charge stated in
pertinent part: A[t]he prosecution has the burden of
proving the defendant guilty . . . by proving each and every element of the
offense charged beyond a reasonable doubt, and if it fails to do so, you must
acquit the defendant.@





[6] The trial court=s jury charge stated: A[a]fter you retire to the jury
room, you should select . . . [a] Presiding Juror.  It is his duty to preside at your
deliberations, vote with you, and when you have unanimously agreed upon a
verdict, to certify your verdict . . . and . . . [sign] the same as Presiding
Juror.@