**AFFIRMED as MODIFIED and Opinion Filed December 2, 2020**



In The

**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-19-00703-CR**

**MICHAEL MARTESE JOHNSON, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 291st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F-1875043-U**

## MEMORANDUM OPINION

Before Justices Whitehill, Pedersen, III, and Reichek
Opinion by Justice Whitehill

A jury convicted appellant of murder, found an enhancement true, and assessed punishment at thirty years in prison.

Appellant now argues that: (i) he was denied his constitutional and statutory rights to the best interpretive deaf translation services; (ii) the trial court erred by denying a new trial; (iii) bad character evidence was erroneously admitted during the guilt/innocence trial phase; (iv) the trial court abused its discretion by allowing testimony concerning gang activity; (v) the trial court abused its discretion by issuing

two Allen charges[1]; and (vi) the judgment should be modified to reflect the special findings applicable to the court's deadly weapon finding.

We conclude that the absence of a second interpreter did not substantially impair appellant's defense, and therefore the trial court did not err by denying appellant's motion for new trial.

We further conclude that appellant did not preserve his complaint about bad character evidence, and the evidence was not erroneously admitted because it was relevant and its probative value outweighed its prejudicial effect. For the same reasons, evidence of gang affiliation was not erroneously admitted during the punishment phase.

We further conclude that appellant did not preserve his complaint about the *Allen* charges, but even had it had been preserved, the charges were not unduly coercive.

Finally, the record supports the requested judgment modification.

We therefore modify the judgment, and as modified, affirm.

## I. BACKGROUND

On the evening in question, appellant and his wife met several acquaintances at a car wash where they frequently congregated. Those acquaintances include

---

[1] An *Allen* instruction is a supplemental charge sometimes given to a deadlocked jury that emphasizes the importance of reaching a verdict. *Allen v. United States*, 164 U.S, 492 (1896); *Traylor v. State*, 567 S.W.3d 741, 744 (Tex. Crim. App. 2018).

Arron Mobley, Ramon Whaley, Christopher Cardona, and Frederick Ware, the man who was murdered.

Ware sold drugs for appellant, and appellant was angry because someone had recently stolen drugs from Ware that appellant had provided to sell.

Appellant, his wife, Mobley, and Ware left the car wash in a Dodge Charger and Whaley and Cardona followed behind them in a jeep. The group first stopped at a CVS to look for the person suspected of stealing the drugs from Ware. Ware and Mobley argued along the way about Ware owing appellant money for the drugs. According to Mobley, appellant told Ware, "You better have my money, and if you don't, its going to be some problems."

The CVS stop proved unsuccessful. The group then arrived on a dead-end street by a wooded area. Appellant, Ware, and Mobley got out of the car and argued about money.

As the argument continued, appellant pulled out a gun, handed it to Mobley and said, "When I count to three, smoke this fool." Mobley complied.

Ware's body was subsequently discovered lying by the side of a dead-end road. He had head trauma and a ripped jacket, and casings from a 9-millimeter Luger were found near the body. The medical examiner ruled that the cause of death was a gunshot wound that entered the skull.

Mobley later agreed to testify for the State in exchange for a ten-year prison sentence. Appellant was charged with murder and the case was tried to a jury.

The jury found appellant guilty and assessed punishment at thirty years in prison. Judgment was entered accordingly, and this appeal followed.

## II. ANALYSIS

### A. First, Second, and Third Issues: Was appellant denied his rights to interpretive deaf translation services?

No. The record reflects that appellant had a basic understanding of the witness and the absence of a second interpreter did not substantially affect his defense.

#### 1. Standard of Review and Applicable Law

A trial court's decision whether to provide deaf interpretive services to a material witness should not be disturbed absent a clear abuse of discretion. *See Baldera v. State*, 517 S.W.3d 756, 778 (Tex. Crim. App. 2016) (citing *Linton v. State*, 275 S.W.3d 493, 502 (Tex. Crim. App. 2009)). We do not reverse the trial court's decision unless it lies outside the zone of reasonable disagreement. *Linton*, 275 S.W.3d at 503. Thus, the trial judge has wide discretion in determining the adequacy of interpretive services. *Id.* at 500.

Article 38.31 states that if a defendant or a witness is deaf, the court "shall appoint a qualified interpreter to interpret the proceedings in any language that the deaf person can understand, including but not limited to sign language." TEX. CODE CRIM. PROC. art. 38.31(a). A person is deaf under article 38.31 when the person "has a hearing impairment . . . that inhibits the person's comprehension of the proceedings or communication with others." *Id.* art. 38.31(g)(1); *see Ex parte Cockrell*, 424 S.W.3d 543, 546 (Tex. Crim. App. 2014).

Article 38.31 serves the guarantee of due process and implements the constitutional right of confrontation, which includes

> the right to have trial proceedings presented in a way that the accused can understand. Under [article 38.31] and the relevant constitutional provisions, the trial court has a duty to devise a communication solution that provides the particular defendant with "that minimum level" of understanding that is constitutionally required.

*Linton v. State*, 275 S.W.3d 493, 501 (Tex. Crim. App. 2009) (footnote omitted); *see also* U.S. Const. amends. V (due process rights), VI (in all criminal prosecutions, "the accused shall enjoy the right to . . . be confronted with the witnesses against him").

The ultimate question is whether any inadequacy in the defendant's or witness's understanding made the trial fundamentally unfair. *Linton*, 275 S.W.3d at 503. The trial is fundamentally unfair when the defendant is unable to assist in his own defense. *Id*. at 504. 100% comprehension, however, is "not the constitutional requirement." *Id.* at 508.

### 2. The testimony at issue

Mobley is hearing-impaired and testified for the State. Windy Rossi, a sign-language interpreter, was utilized to sign counsel's questions to Mobley. Mobley testified that despite his hearing issues, he could hear what the prosecutor was asking him, that he had been reading lips since he was eleven years old, and that people can carry on conversations with him without utilizing sign-language. Mobley verbally answered questions asked of him and his responses were not interpreted by Rossi.

After Mobley's direct examination, appellant's trial counsel objected to the use of only one interpreter.[2]   The judge excused the jury to consider the objection.

During the hearing, Rossi testified that the use of two sign-language interpreters is typical if a witness' testimony exceeds an hour-and-a-half.   She also said that the second interpreter is used to monitor the first interpreter's message. Rossi acknowledged that Mobley's responses were not as clear as a person who could hear normally and that some of his words were hard to understand.

On cross-examination, Rossi testified that Mobley's responses were consistent with the State's questions.  She also said that the State accurately repeated Mobley's answers.   After inquiry by the trial court, Rossi admitted that two interpreters were sent to the hearing but one was not certified.  Nonetheless, Rossi informed the trial court that she could handle the proceedings without a second interpreter since Mobley would be speaking his own responses.  Rossi also said that she was adequately able to translate for Mobley.   The trial court overruled appellant's objection.

Nothing in the record suggests that appellant did not understand Mobley to the detriment of his own defense.  Although the record does not show how much time Mobley's testimony consumed, there are thirty-three pages of direct

---

[2] Appellant's motion for new trial also objected to the use of only one interpreter.  Affidavits from trial counsel stating that they were unable to understand Mobley were attached to the motion.  During the hearing, counsel also provided the court with standards addressing best practices for sign-language interpreters at trial.  The court reviewed the exhibits and denied the motion.

examination transcript, followed by a significant break. During that break, appellant's decision concerning testifying was placed on the record, the court conducted the hearing on appellant's second interpreter objection, and appellant cross-examined two other witnesses. Mobley's cross-examination followed, consisting of seventeen pages in the record. Thus, there is nothing to establish that Rossi reached a state of mental exhaustion that would trigger the need for a second interpreter.

Appellant further insists that the absence of a second interpreter deprived him of his constitutional right of confrontation because the inability to understand the witness impeded his cross-examination. The Confrontation Clause, however, "guarantees only an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, a defendant might wish." *Balderas*, 517 S.W.3d at 778–79 (citing *Johnson v. State*, 433 S.W.3d 546, 557 & n.48 (Tex. Crim. App. 2014).

During cross-examination, appellant's counsel did not indicate that he could not fully understand Mobley's responses, nor did he object that he could not effectively cross-examine Mobley. In addition, counsel did not ask Mobley to sign his answers or otherwise have the interpreter speak for him.

To the contrary, counsel cross-examined Mobley along much the same lines as other witnesses. The questions and answers do not suggest an absence of comprehension or an impaired defense.

Under these standards, we cannot conclude that the trial court abused its discretion or violated appellant's constitutional rights by not appointing a second interpreter. Article 38.31(a) and *Linton* instruct us that we measure the trial court's decision on interpretive services by whether the defendant has a basic understanding of the proceedings to support his participation in them. *See* TEX. CODE CRIM. PROC. art. 38.31(a); *Linton*, 275 S.W.3d at 500–04; *see also Brazell v. State*, 828 S.W.2d 580, 581 (Tex. App.—Austin 1992, pet. ref'd) (a deaf defendant must have a "minimum understanding" of the proceedings); *Lincoln v. State*, 999 S.W.2d 806, 810 (Tex. App.—Austin 1999, no pet.) ("Having observed appellant throughout the trial, the district court was in the best position to judge the credibility of appellant's claim that he did not hear the proceedings.").

The record here reflects such a basic understanding. Accordingly, we resolve appellant's first three issues against him.

**B.     Fourth Issue:  Was bad character evidence erroneously admitted during the guilt/innocence phase of trial?**

No. Appellant did not object to the evidence as extraneous bad act or character evidence under Rule 404(b), so this aspect of appellant's argument was not preserved for our review. *See* TEX. R. APP. P. 33.1; *Heidelberg v. State,* 144 S.W.3d 535, 537 (Tex. Crim. App. 2004) (legal basis of appellate complaint must comport with the trial objection).

And as to the objections that appellant made under Rule 401 and 403, we conclude the evidence was relevant and the trial court could reasonably conclude that its probative value was not outweighed by its prejudicial effect.

### 1.    Standard of Review and Applicable Law

A trial court's decision regarding the admissibility or exclusion of evidence is reviewed under an abuse of discretion standard. *Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016). A reviewing court must consider the ruling in light of what was before the trial court at the time the ruling was made and, because trial courts are in the best position to decide questions of admissibility, we uphold the trial court's decision when that decision is within the zone of reasonable disagreement. *Billodeau v. State*, 277 S.W.3d 34, 39 (Tex. Crim. App. 2009); *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g). In other words, a trial court abuses its discretion only if its decision is "so clearly wrong as to lie outside the zone within which reasonable people might disagree." *Taylor v. State,* 268 S.W.3d 571, 579 (Tex. Crim. App. 2008). A trial court does not abuse its discretion if any evidence supports its decision. *See Osbourn v. State,* 92 S.W.3d 531, 538 (Tex. Crim. App. 2002). A reviewing court should therefore uphold the trial court's evidentiary ruling if it was correct on any theory of law applicable to the case. *See De La Paz v. State,* 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

Rule 403 allows the exclusion of evidence if its probative value is substantially outweighed by a danger of unfair prejudice or misleads the jury. *See* TEX. R. EVID. 403. "The probative force of evidence refers to how strongly it serves to make the existence of a fact of consequence more or less probable." *Gonzalez v. State*, 544 S.W.3d 363, 372 (Tex. Crim. App. 2018). A trial judge has substantial discretion in balancing probative value and unfair prejudice. *See Powell v. State*, 189 S.W.3d 285, 288 (Tex. Crim. App. 2006).

Relevant evidence is presumed to be more probative than prejudicial. *Santellan v. State*, 939 S.W.2d 155, 169 (Tex. Crim. App. 1997). Evidence is unfairly prejudicial if it has the capacity to lure the factfinder into declaring guilt on a ground other than proof specific to the offense charged. *Manning v. State*, 114 S.W.3d 922, 928 (Tex. Crim. App. 2003).

When conducting a Rule 403 balancing test, courts should consider: (i) the evidence's probative force; (ii) the proponent's need for the evidence; (iii) the evidence's potential to suggest a decision on an improper basis; (iv) the evidence's tendency to distract the jury from the main issues; (v) any tendency for the jury to give the evidence undue weight because it has not been fully equipped to evaluate the evidence's probative force; and (vi) the likelihood that presenting the evidence will consume an inordinate amount of time. *See Gigliobianco v. State*, 210 S.W.3d 637, 641–642 (Tex. Crim. App. 2006).

Though the existence of a motive is generally not necessary to support a conviction, evidence establishing a motive is generally admissible because it is a factor that is related to a defendant's guilt or innocence. *Knox v. State*, 934 S.W.2d 678, 682 n.10 (Tex. Crim. App. 1996).

Drug transactions between a defendant and a complaining witness may be used to establish a motive for the charged offense. *See Saxer v. State*, 115 S.W.3d 765, 775 (Tex. App.—Beaumont 2003, pet. ref'd) (evidence that the complaining witness gave marijuana to the defendant and owed the defendant money for drugs the defendant provided to the complaining witness was relevant to establish motive).

In addition, threats that occur after the commission of a charged offense may also reflect a consciousness of guilt. *See Hedrick v. State*, 473 S.W.3d 824, 830 (Tex. App.—Houston [14th Dist.] 2015, no pet.). Such threats reflect upon a defendant's state of mind because they are designed to reduce the likelihood of prosecution, conviction, or incarceration for the charged offense. *Id.* (citing *Ransom v. State*, 920 S.W.2d 288, 299 (Tex. Crim. App. 1994)). Thus, evidence of such threats may tend to make a defendant's state of mind for the charged offense more or less probable.

### 2. The Evidence

Appellant argues that evidence concerning his drug sales and threat to one of the witnesses after the shooting was erroneously admitted. Specifically, he complains about Mobley's and Cardona's testimony.

Mobley testified that appellant gave Ware drugs to sell. A week before the murder, Mobley was in the back seat of a car when Ware met a woman at the car wash to sell her some of the drugs appellant had provided. During the transaction, Ware got out of the car to use the restroom and Mobley stepped out of the car to call his mother. The woman then locked the doors to the car and drove off with the drugs.

Afterwards, Ware called appellant and told him what happened. Appellant told Ware that he had better have the money for the lost drugs. The following week, Mobley and Ware broke into several cars to make the money owed to appellant.

Mobley said that during the car ride from the car wash to the dead end, appellant's conversation with Ware was focused on Ware's decision to use appellant's money to buy drugs for personal use. When they got out of the car, appellant demanded his money from Ware, but he didn't have it. Appellant then directed Mobley to kill Ware.

Cardona testified that he had seen Ware sell drugs. According to Cardona, on the evening in question, appellant told Ware, "I'm going to teach you not to play with my f–ing money." He also testified that appellant asked Ware, "where is my f–ing money? I'm going to kill you."[3]

---

[3] Whaley also testified that appellant was yelling at Ware about money before the shooting.

This testimony concerning appellant's relationship with Ware and the drug transactions not only establish appellant's motive for setting up Ware's death, but also reflect on appellant's state of mind to intentionally kill Ware. Thus, the evidence made appellant's *mens rea* for ordering Ware's death more probable than it did without it.

Likewise, appellant's instruction and threat to Whaley also reflects his state of mind during the shooting, making it more probable that Ware's death was intentional. Specifically, Whaley testified that on the same day of the shooting, appellant instructed him to sell the weapon used to kill Ware. The next day, appellant told Whaley he wanted to meet with him. When they met, appellant told Whaley that if he told anyone about what took place, appellant would kill him. This threat is relevant to appellant's state of mind and suggests an attempt to avoid the consequences of his actions. Thus, the complained-of evidence was relevant.

None of the foregoing evidence was overly prejudicial under Rule 403 standards. Under *Gigliobianco*, the probative force of both appellant's drug sales and threat to Whaley weigh strongly in favor of the State's theory that Ware's death was intentionally carried out at appellant's direction. And the State's need for the evidence was strong. Without the evidence, appellant would have been free to argue that Mobley acted of his own accord and there would have been no explanation about why appellant wanted to kill Ware. Thus, the first two *Gigliobianco* factors weigh heavily in favor of admitting the evidence. *See Gigliobianco,* 210 S.W.3d at 641.

The third and fourth factors, the tendency of the evidence to suggest a decision on an improper basis and the evidence's tendency to distract the jury, also favor admission. *See Gigliobianco,* 210 S.W.3d at 641. Appellant's drug transactions and the threat against Whaley focused on appellant's mental state and motive for orchestrating the murder. Contrary to being distracting, appellant's mental state was one of the elements the State was required to prove. Moreover, the trial court instructed the jury that the evidence could only be considered to determine "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Thus, we presume that the jury did not give the evidence undue weight. *See Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005) (we presume jury follows court's instructions).

Finally, the evidence did not consume an inordinate amount of time and was not repetitive. *See Gigliobianco,* 210 S.W.3d at 641. Whaley was the only witness who testified about the threat, and while Mobley and Cardona both testified that Ware sold drugs, Mobley was the only witness who testified that Ware did so on appellant's behalf. All this testimony consumed less than twenty pages of a ten-volume transcript.

Because the *Gigliobianco* factors favor of admitting the evidence, we cannot conclude the trial court erred in doing so. We therefore resolve appellant's fourth issue against him.

**C.   Fifth Issue: Was evidence concerning gang activity erroneously admitted?**

No.   The evidence was relevant to punishment and its probative value outweighed its prejudicial effect.

**1.   Standard of Review and Applicable Law**

A trial court's decision regarding the admissibility or exclusion of evidence is reviewed under an abuse of discretion standard.  *Johnson*, 490 S.W.3d at 908.  A trial court abuses its discretion only when its decision lies outside the zone of reasonable disagreement.  *Billodeau*, 277 S.W.3d at 39; *Montgomery*, 810 S.W.2d at 391.

During the punishment stage of trial, evidence may be offered "as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character . . . ." TEX. CODE CRIM. PROC. art.  37.07, § 3(a)(1).  A court, nevertheless, "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." TEX. R. EVID.  403.

"As a general rule, evidence of a defendant's gang affiliation and the . . . activities of that gang are relevant and admissible at the punishment phase to show the defendant's character." *Lara v. State*, No. 05-17-00467-CR, 2018 WL 3434547, at *8 (Tex. App.—Dallas July 17, 2018, pet. ref'd) (not designated for publication)

–15–

(citing *Beasley v. State*, 902 S.W.2d 452, 456 (Tex. Crim. App. 1995). Gang affiliation may be documented by several means, including by tattoos. *See* TEX. CODE CRIM. PROC. art. 61.02(c)(2).

### 2. The Evidence

Appellant objected that the State's evidence concerning his gang affiliation was not relevant and was "overly prejudicial." The trial court overruled the objection. But on appeal, appellant argues only that the evidence violated TEX. R. EVID. 404(b) because it was offered to show character conformity. Because the trial objection does not comport with the issue raised here, the issue was not preserved for our review. *See Clark v. State,* 365 S.W.3d 333, 339 (Tex. Crim. App. 2012); TEX. R. APP. P. 33.1.

Additionally, even had if appellant's issue been preserved, we cannot conclude the evidence was erroneously admitted.

The evidence at issue consisted of testimony from Detective Barrett Nelson of the Dallas Police Department regarding appellant's gang affiliation and photographs of various tattoos on appellant's body that Nelson reviewed with the jury. Nelson ultimately concluded that appellant was a member of the 59 Bounty Hunter Blood gang. According to Nelson, the gang sought money, power, and respect through the sale of narcotics in the city.

Nelson also testified that appellant's tattoos indicated that appellant was a drug dealer who worked in the same area as the car wash frequented by appellant,

Ware, and Mobley. That area of Pleasant Grove, which was known as "Greedy Grove" to gang affiliated drug runners, was specifically inked on appellant's body. Nelson also said that appellant's tattoos reflected appellant operated a drug operation as the man in charge, and that was how he made a living.

Nelson explained that the phrase "On Blood" was an expression used by individuals admitting gang membership and meant "on my gang," and appellant's use of that phrase as "admitting gang membership."

Appellant's tattoos and Nelson's testimony were relevant to the issue of whether it was more probable or not that appellant was affiliated with a gang. Such affiliation relates directly to Ware's murder, and to killing Ware at appellant's direction because he lost appellant's drugs and the sale proceeds.

Further, the tattoos revealed that appellant had engaged in this lifestyle for some time because many tattoo references dated back to the early 2000s. The tattoos also supported Nelson's theory that appellant made a living selling drugs. Thus, the photographs and testimony were relevant.

Having determined that the evidence was relevant, we must still determine whether the probative value outweighed an unfairly prejudicial effect. *See* TEX. R. EVID. 403. To this end, we note that Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial. *Young v. State*, 283 S.W.3d 854, 876 (Tex. Crim. App. 2009). There is nothing to rebut that presumption here.

While the evidence was unfavorable to appellant, it was not unfairly prejudicial. The gang evidence was tailored to the purpose allowed by article 37.07. *See Lara*, 2018 WL 3434547 at *8. And there is nothing to establish that the evidence was so unfairly prejudicial that there was a clear disparity between the degree of prejudice and the probative value. *Jackson v. State*, 05-13-00579-CR, 2014 WL 3955171, at *4 (Tex. App.—Dallas Aug. 14, 2014, no pet.) (mem. op., not designated for publication). Indeed, the punishment range for the offense (enhanced) is not more than ninety-nine years or life and not less than fifteen years and a fine not to exceed $10,000. *See* TEX. PENAL CODE § 12.42(c)(1). Appellant received a mid-range sentence of thirty years in prison. This demonstrates that the jury was not unduly prejudiced. *See Garcia v. State*, No. 05-19-01165-CR, 2020 WL 4381770, at *4 (Tex. App.—Dallas July 31, 2020, no pet.) (considering punishment range in determining gang evidence was not unfairly prejudicial).

We resolve appellant's fifth issue against him.

### D.     Sixth Issue:  Were the *Allen* charges unduly coercive?

Appellant did not preserve this issue for our review. *See* TEX. R. APP. P. 33.1.

Additionally, even had appellant not agreed to the *Allen* charges, submitting those charges was not reversible error because the charges were not unduly coercive. At two different points during deliberation, the jury informed the court that they

were deadlocked. Each time, the court read the jury an *Allen* charge that was essentially the same[4]:

> If this jury finds itself unable to arrive at a unanimous verdict, it will be necessary for the Court to declare a mistrial and discharge the jury. The indictment will still be pending, and it is reasonable to assume that the case will be tried again before another jury at some future time. Any future jury will be empaneled in the same way this jury has been empaneled and will likely hear the same evidence which has been presented to this jury. The questions to be determined by that jury will be the same questions confronting you, and there is no reason to hope the next jury will find these questions any easier to decide than you have found them.
>
> With this additional instruction, you are requested to continue deliberations in an effort to arrive at a verdict that is acceptable to all members of the jury, if you can do so without doing violence to your conscience. Don't do violence to your conscience, but continue deliberating.

In each instance, appellant's counsel affirmatively stated that he had "no objection" to the charge.

Appellant now complains that the charges were coercive. But because there was no trial objection to the charges, appellant's challenge was not preserved for appellate review. *See Thomas v. State,* 312 S.W.3d 732, 740 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd). TEX. R. APP. P. 33.1(a); *Santana v. State*, No. 11-15-00010-CR, 2017 WL 469380, at *2 (Tex. App.—Eastland Feb. 2, 2017, pet. ref'd) (not designated for publication).

---

[4] The second charge differed somewhat by telling the jury to continue deliberations in an effort to reach a unanimous verdict or a verdict that was acceptable to all members of the jury, while the first charge only referred to reaching a verdict that was acceptable to all members of the jury.

–19–

Moreover, appellant would still not prevail even had he objected to submitting the *Allen* charges to the jury. Specifically, an *Allen* charge "is designed to blast loose a deadlocked jury." *Green v. United States*, 309 F.2d 852, 854 (5th Cir. 1962). As the Texas Court of Criminal Appeals has explained, such a charge reminds the jury that if it is unable to reach a verdict, a mistrial will result, the case will still be pending, and there is no guarantee that a second jury would find the issue any easier to resolve. *Barnett v. State*, 189 S.W.3d 272, 277 n.13 (Tex. Crim. App. 2006); *see Allen*, 164 U.S. at 501.

An *Allen* charge will constitute reversible error only if, on its face, it is so improper as to render jury misconduct likely. *Howard v. State*, 941 S.W.2d 102, 123 (Tex. Crim. App. 1996). A charge is "unduly coercive and therefore improper only if it pressures jurors into reaching a particular verdict or improperly conveys the court's opinion of the case." *West v. State*, 121 S.W.3d 95, 107–08 (Tex. App.— Fort Worth 2003, pet. ref'd*)*; *see also Arrevalo v. State*, 489 S.W.2d 569, 571 (Tex. Crim. App. 1973).

The charges here are not coercive because they do not pressure the jury to reach a particular result or convey the court's opinion about the case. Accordingly, the trial court did not err. We resolve appellant's sixth issue against him.

E.      **Seventh Issue:  Should the judgment be reformed?**

Appellant's seventh issue requests that we modify the judgment to reflect the trial court's deadly weapon finding. We are authorized to reform a judgment to

–20–

make the record speak the truth when we have the necessary information to do so. *Bigley v. State*, 865 S.W.2d 26, 27 (Tex. Crim. App. 1993). Here, the record reflects that the court made an affirmative deadly weapon finding. We therefore sustain appellant's seventh issue and modify the judgment accordingly.

## III. CONCLUSION

We modify the special findings section of the judgment to reflect that appellant "used or exhibited a deadly weapon, namely a firearm, during the commission of this felony offense." As modified, the judgment is affirmed.

/Bill Whitehill/
BILL WHITEHILL
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
190703F.U05

–21–



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

MICHAEL MARTESE JOHNSON, Appellant

No. 05-19-00703-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 291st Judicial District Court, Dallas County, Texas Trial Court Cause No. F-1875043-U. Opinion delivered by Justice Whitehill. Justices Pedersen, III and Reichek participating.

Based on the Court's opinion of this date, the special findings section of the trial court's judgment is **MODIFIED** to reflect that appellant used or exhibited a deadly weapon, namely a firearm, during the commission of this felony offense. As modified, the judgment is **AFFIRMED**.

Judgment entered December 2, 2020