

# NUMBER 13-24-00169-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

DAVID SANCHEZ,                                                          Appellant,

v.

THE STATE OF TEXAS,                                                    Appellee.

## ON APPEAL FROM THE 130TH DISTRICT COURT
## OF MATAGORDA COUNTY, TEXAS

## MEMORANDUM OPINION

**Before Chief Justice Tijerina and Justices West and Fonseca
Memorandum Opinion by Justice Fonseca**

Appellant David Sanchez was convicted of continuous sexual abuse of a young child, a first-degree felony, and he was sentenced to thirty years' imprisonment. *See* Tex. Penal Code Ann. § 21.02(b). On appeal, he argues the trial court erred by: (1) "failing to comply with rules governing jury communications" and "forcing the jury into marathon deliberations"; and (2) issuing an improperly coercive *Allen* charge. We affirm.

## I. BACKGROUND

A Matagorda County grand jury returned an indictment alleging that, between September 1, 2007, and May 1, 2008, Sanchez committed two or more acts of sexual abuse against Diana,[1] a child younger than fourteen years of age. *See id.*

At trial, Diana testified that she was born in 2002 and graduated from high school in 2021. She attended pre-kindergarten in Bay City from August 2007 to May 2008. During that time, her mother typically brought her to school, and she would take the bus to her aunt Rachael's trailer after school because her mother was at work. Rachael lived in the trailer with Sanchez. According to Diana, Sanchez sexually abused her multiple times during her pre-kindergarten year after the bus dropped her off. Specifically, he licked her genital area, forced her to touch his penis, and penetrated her vagina with his hand. She stated that the abuse occurred "almost every week or every other week."

Diana said that she told her friend Torri about the abuse when she was twelve years old, but she asked Torri not to tell anyone. Diana later reported the abuse to her mother in 2018, when she was a freshman in high school. She explained that she delayed telling her mother because she was afraid that it would upset her and make her feel guilty. Diana's mother contacted police, and Diana submitted to a sexual assault examination and a forensic interview. The nurse examiner and forensic interviewer testified at trial as to Diana's recollections of the abuse, which were consistent with her trial testimony.

Following the close of evidence at the guilt-innocence phase of trial on March 28, 2024, the jury was excused to deliberate at 1:41 p.m. The clerk's record contains eleven

---

[1] We use a pseudonym to protect the complainant's identity. *See* TEX. CONST. art. I, § 30(a)(1) (providing that a crime victim has "the right to be treated . . . with respect for the victim's dignity and privacy throughout the criminal justice process"); TEX. CODE CRIM. PROC. ANN. ch. 58, subch. C ("Confidentiality of Identifying Information of Sex Offense Victims").

jury notes delivered to the trial court between 3:00 p.m. to 8:55 p.m. One note, delivered at 5:07 p.m., asked "[w]hat do we do if we are at an [i]mpass[e]?" The final note, delivered at 8:55 p.m., stated "[w]e are at an [i]mpass[e] and we are still deadlocked without a unanimous decision." The trial court then issued a supplemental charge instructing the jury to continue its deliberations. Subsequently, the jury returned a unanimous guilty verdict at 10:35 p.m.

The jury sentenced Sanchez as set forth above, and the trial court rendered judgment in accordance with the jury's findings. This appeal followed.

## II. DISCUSSION

### A. Jury Communications and Deliberations

By a multifarious first issue, Sanchez contends that the trial court committed reversible error by "failing to comply with rules governing jury communications" and "forcing the jury into marathon deliberations."

Article 36.27 of the Texas Code of Criminal Procedure states:

> When the jury wishes to communicate with the court, it shall so notify the sheriff, who shall inform the court thereof. Any communication relative to the cause must be written, prepared by the foreman and shall be submitted to the court through the bailiff. The court shall answer any such communication in writing, and before giving such answer to the jury shall use reasonable diligence to secure the presence of the defendant and his counsel, and shall first submit the question and also submit his answer to the same to the defendant or his counsel [f]or objections and exceptions, in the same manner as any other written instructions are submitted to such counsel, before the court gives such answer to the jury, but if he is unable to secure the presence of the defendant and his counsel, then he shall proceed to answer the same as he deems proper. The written instruction or answer to the communication shall be read in open court unless expressly waived by the defendant.

> All such proceedings in felony cases shall be a part of the record and recorded by the court reporter.

TEX. CODE CRIM. PROC. ANN. art. 36.27.

3

In this case, although the clerk's record contains eleven different jury notes, the reporter's record indicates that only three of the notes were discussed in open court. Sanchez argues that this violated the statute and deprived him of his constitutional right to a fair trial. He observes that one of the jury notes asks what to do "if we are at an [i]mpass[e]"; the trial court replied by instructing the jury to "continue your deliberations," but because the note was not discussed on the record, there is no indication that defense counsel had a "chance to respond" to the note. Moreover, another of the undiscussed jury notes was a request to "take a break" at 7:11 p.m., and though the trial court granted that request, it is unclear how long the break was or whether defense counsel was made aware of the request.

The State contends that there is no error apparent from the record because, although it does not affirmatively show the trial court complied with article 36.27 as to the undiscussed notes, it also does not show it failed to comply. *See Green v. State*, 912 S.W.2d 189, 192 (Tex. Crim. App. 1995) ("In the absence of a showing to the contrary in the record, we presume the trial court's response [to a jury note] was in open court and in appellant's presence. . . . Therefore, we also presume appellant had an opportunity to object."); *see also Word v. State*, 206 S.W.3d 646, 651 (Tex. Crim. App. 2006) (holding that appellant "procedurally defaulted any claimed violation of Article 36.27 and any objection to the trial court's answers to the jury questions" because "the record . . . did not show that the trial court failed to notify appellant of the jury questions or that appellant objected to the trial court's answers to the jury questions").

The State also contends that, even if the court violated the statute by failing to read its answers to certain jury notes in open court, Sanchez has not demonstrated he suffered

4

harm resulting from that failure. *See* TEX. R. APP. P. 44.2(b) (providing that non-constitutional error must be disregarded unless it affects substantial rights).

We agree. Sanchez argues, without reference to authority, that "[t]he trial court's unrecorded communication with the jury begins to put inappropriate pressure on them to reach a decision before being released." However, the trial court never gave the jury any substantive instructions or answers in response to the notes which were not discussed in open court. Instead, the court responded to those notes by instructing the jurors to refer to the original charge or to continue their deliberations.[2] Sanchez does not explain how the trial court's failure to read these responses in open court affected his substantial rights or otherwise influenced the outcome of the case. *See id.*; *Taylor v. State*, 268 S.W.3d 571, 592 (Tex. Crim. App. 2008) (noting that an error affects substantial rights "only when it has a substantial and injurious effect or influence in determining the jury's verdict"); *see also* TEX. R. APP. P. 38.1(i).

Finally, "[t]he length of time a jury may be held for deliberation in a criminal case rests in the sound discretion of the trial judge, who will not be reversed on appeal absent a showing by appellant that discretion was abused." *Guidry v. State*, 9 S.W.3d 133, 155 (Tex. Crim. App. 1999) (citing *Montoya v. State*, 810 S.W.2d 160, 166 (Tex. Crim. App. 1989)); *see* TEX. CODE CRIM. PROC. ANN. art. 36.31 ("After the cause is submitted to the jury, it may be discharged when it cannot agree and both parties consent to its discharge;

---

[2] The three jury notes which were discussed in open court constituted requests to read back trial testimony. *See* TEX. CODE CRIM. PROC. ANN. art. 36.28 ("In the trial of a criminal case in a court of record, if the jury disagree as to the statement of any witness they may, upon applying to the court, have read to them from the court reporter's notes that part of such witness testimony or the particular point in dispute . . . ."). In response, the trial court provided the requested testimony excerpts to the jury, and in accordance with article 36.27, it recited those excerpts in open court in defense counsel's presence. *See id.* art. 36.27.

or the court may in its discretion discharge it where it has been kept together for such time as to render it altogether improbable that it can agree."). Sanchez appears to contend that the trial court abused its discretion by ordering deliberations to continue after receiving the jury's notes at 5:07 p.m. (asking "[w]hat do we do if we are at an [i]mpass[e]?") and 8:55 p.m. (stating "[w]e are at an [i]mpass[e]"). However, his counsel did not object to these instructions. *See* TEX. R. APP. P. 33.1(a) (concerning preservation of error for appeal).[3] Further, as the State notes, the trial court granted the jurors' request for a break, and there is no indication that the jurors ever sought any additional break or to reconvene the next day.

In any event, we cannot conclude the trial court abused its discretion by directing the jury to continue deliberating. In assessing abuse of discretion in this context, "we consider the length of the trial and volume of evidence submitted to the jury." *Jackson v. State*, 17 S.W.3d 664, 676 (Tex. Crim. App. 2000). In *Andrade v. State*, the trial court instructed the jurors to continue deliberations when they indicated that they were deadlocked after four-and-a-half hours. 700 S.W.2d 585, 589 (Tex. Crim. App. 1985). The jury continued deliberating for another eight hours before returning a unanimous verdict. *Id.* Given the nature of the capital case involved, the Texas Court of Criminal Appeals determined that the judge did not abuse his discretion in permitting the jury to deliberate for twelve hours. *Id.*

Here, the jury heard three days of testimony during the guilt-innocence phase of trial. After around three-and-a-half hours of deliberation, the jury sent a note asking what

---

[3] Sanchez relies heavily on the alleged coerciveness of the *Allen* charge in arguing that he was deprived of his right to a fair trial. We will address arguments concerning the *Allen* charge in our discussion of Sanchez's second issue.

to do if they were at an impasse. After a further four hours of deliberation, the jury sent another note affirmatively stating they were at an impasse. The trial court directed the jury to continue deliberating after both notes, without objection by defense counsel. The jury ultimately reached a unanimous verdict around one hour and forty minutes after receiving the supplemental *Allen* charge, having deliberated approximately nine hours in total, including breaks. Sanchez cites no authority, and we find none, indicating that a trial court abuses its discretion under these circumstances. *See* TEX. R. APP. P. 38.1(i). On this record, we cannot conclude that the trial court "forc[ed] the jury into marathon deliberations" or violated Sanchez's right to a fair trial for this first-degree felony offense. Sanchez's first issue is overruled.

**B.** *Allen* **Charge**

By his second issue, Sanchez contends that the trial court erred by issuing an "improperly coercive" *Allen* charge.

An *Allen* charge is a supplemental charge that may be given to a jury that declares itself deadlocked. *Barnett v. State*, 189 S.W.3d 272, 277 n.13 (Tex. Crim. App. 2006); *see Allen v. United States*, 164 U.S. 492, 501 (1896). It reminds the jury that if it is unable to reach a verdict, a mistrial will result, the case will still be pending, and there is no guarantee that a second jury would find the issue any easier to resolve. *Barnett*, 189 S.W.3d at 277 n.13 (citing *Allen*, 164 U.S. at 501). While such a charge is permissible, trial courts must be careful to word it and administer it in a non-coercive manner. *Id.* We review the charge "in its context and under all the circumstances" to determine whether it improperly coerced the jury. *Lowenfield v. Phelps*, 484 U.S. 231, 237 (1988).

To prevail on a complaint that an *Allen* charge is coercive, an accused must show

that jury coercion or misconduct likely occurred or occurred in fact. *Taylor v. State*, 173 S.W.3d 851, 854 (Tex. App.—Texarkana 2005, no pet.).[4] An *Allen* charge that pressures jurors into reaching a particular verdict or improperly conveys the trial court's opinion of the case is unduly coercive. *West v. State*, 121 S.W.3d 95, 107–08 (Tex. App.—Fort Worth 2003, pet. ref'd). Conversely, a charge that "speaks to the jury as a whole" and encourages jurors to reexamine their views without surrendering honest convictions is not coercive on its face. *Freeman v. State*, 115 S.W.3d 183, 187 (Tex. App.—Texarkana 2003, pet. ref'd).

The *Allen* charge in this case stated:

> You are instructed that in a large proportion of the cases, absolute certainty cannot be expected. Although the verdict must be the verdict of each individual juror, and not a mere acquiescence in the conclusion of other jurors, each juror should show a proper regard to the opinion of each other.

> You should listen, with a disposition to be convinced, to the arguments of the other jurors. If a larger number of jurors are for deciding the case one way, those in the minority should consider whether they are basing their opinion on speculation or surmise and not on the evidence in the case, keeping in mind the impression the evidence has made on a majority of the jurors of equal honesty and intellect as the minority.

> Bear in mind also that if you do not reach a verdict in this case that a mistrial will be granted and that the case can be tried again to a different jury, but that the next jury will be in no better position to decide the case than you.

> Therefore, you are instructed that it is your duty to decide the case if you

---

[4] Though Sanchez emphasizes that the jury returned a verdict shortly after issuance of the *Allen* charge, he does not explicitly allege that any juror was actually coerced or committed misconduct. We note that, according to the record, the jury deliberated for an hour and forty minutes after issuance of the charge. This militates in favor of a finding of no coercion. *See United States v. Bonam*, 772 F.2d 1449, 1451 (9th Cir. 1985) (holding one-and-a-half-hour post-*Allen* deliberation period "was not an immediate post-charge guilty verdict nor was the verdict rendered in such a short period of time as to raise a suspicion of coercion"); *United States v. Moore*, 429 F.2d 1305, 1307 (9th Cir. 1970) (noting the fact "[t]he jury did not reach a verdict immediately after receiving the instruction" was indicative of the absence of coercion; *see also Ex parte Parra*, 420 S.W.3d 821, 825 (Tex. Crim. App. 2013) (noting, where jury reached a verdict thirty minutes after trial court threatened to "put [jurors] in the county jail" if they "walk[ed] out" of deliberations, that "the timing of the jury's verdict alone is an insufficient basis to find the admonishment coercive"). Moreover, the jurors were polled pursuant to defense counsel's request, and each juror confirmed that the guilty verdict was his or her individual verdict.

can conscientiously do so. You will now retire and continue your deliberations.

Defense counsel objected to the instruction as follows:

> I believe that the judicial trend[ i]s towards the disuse of that charge as being unduly coercive on the minority of the jurors who, regardless of whether they're voting to acquit or convict, feel pressure[] that's not related to merely consideration of the evidence but extraneous factors such as the cost and expense of a retrial, which is never a consideration that should be taken into account when a juror is making a decision about guilt and innocence.

The trial court overruled the objection and instructed the jury accordingly.

On appeal, Sanchez argues the supplemental charge: (1) "pushed the bounds of the 'beyond a reasonable doubt' standard" by telling the jurors they cannot expect "absolute certainty"; (2) "focused on the jurors in the minority" and "suggested they may be basing their [opinions] on speculation and not on evidence"; (3) "not so subtly hinted" that "whichever jurors were in the majority had a more reasonable view of the evidence"; and (4) "failed to include cautionary language that an honest view as to the weight and effect of the evidence should not be surrendered." He contends that the supplemental charge in this case differed in these respects from the "standard" *Allen* charge, such as the one approved by the Texas Court of Criminal Appeals in *Arrevalo v. State*, 489 S.W.2d 569, 571 (Tex. Crim. App. 1973).[5]

---

[5] The *Arrevalo* Court found "nothing . . . of a coercive nature" in the following charge:

> If this jury after a reasonable length of time finds itself unable to arrive at a unanimous verdict, it will be necessary for the court to declare a mistrial and discharge the jury.

> The indictment will still be pending, and it is reasonable to assume that the case will be tried again before another jury at some future time. Any such future jury will be empanelled in the same way this jury has been empanelled, and will likely hear the same evidence which has been presented to this jury. The questions to be determined by that jury will be the same as the questions confronting you and there is no reason to hope that the next jury will find those questions any easier to decide than you have found them.

> With this additional instruction you are instructed to continue deliberations in an effort to arrive at a verdict which is acceptable to all members of the jury.

*Arrevalo v. State*, 489 S.W.2d 569, 571 (Tex. Crim. App. 1973).

Sanchez cites caselaw establishing that it is error to instruct the jury that "it is the duty of the minority to listen to the argument of the majority with some distrust of their own judgment because the rule is that the majority will have better judgment than the mere minority." *Green v. United States*, 309 F.2d 852, 855 (5th Cir. 1962) (finding "[s]uch an instruction leads a jury to believe that it is the duty of the dissenting jurors to accede to the majority's views without full discussion and without regard to the historical right of a single juror to stick to his conscientious opinions of the case"). He also cites authority indicating that, when a jury returns its verdict soon after receiving the supplemental instruction, this "suggests the possibility of coercion." *Lowenfield*, 484 U.S. at 240 (jury reached unanimous verdict thirty minutes after *Allen* charge was issued).

Finally, Sanchez observes that "[i]f a trial judge inquires into the numerical division of the jury and then gives an *Allen* charge, the charge is per se coercive and requires reversal." *United States v. Ajiboye*, 961 F.2d 892, 893–94 (9th Cir. 1992) (citing *Brasfield v. United States*, 272 U.S. 448, 450 (1926) (finding that a trial court may not "inquir[e] of a jury, unable to agree, the extent of its numerical division")). The *Ajiboye* court further held that

> [e]ven when the judge does not inquire but is inadvertently told of the jury's division, reversal is necessary if the holdout jurors could interpret the charge as directed specifically at them—that is, if the judge knew which jurors were the holdouts and each holdout juror knew that the judge knew he was a holdout.

*Id.* (citing *United States v. Sae-Chua*, 725 F.2d 530, 532 (9th Cir. 1984)).

Given the circumstances of this case, we cannot conclude that the supplemental charge in this case was improperly coercive. The language used in the charge—including its advice that "absolute certainty" cannot be expected in most cases—appears to be

10

drawn largely from *Allen* itself. *See Allen*, 164 U.S. at 501.[6] In concluding that the charge

was not impermissibly coercive, the *Allen* Court reasoned:

> While, undoubtedly, the verdict of the jury should represent the opinion of each individual juror, it by no means follows that opinions may not be changed by conference in the jury room. The very object of the jury system is to secure unanimity by a comparison of views, and by arguments among the jurors themselves. It certainly cannot be the law that each juror shou[l]d not listen with deference to the arguments, and with a distrust of his own judgment, if he finds a large majority of the jury taking a different view of the case from what he does himself. It cannot be that each juror should go to the jury room with a blind determination that the verdict shall represent his opinion of the case at that moment, or that he should close his ears to the arguments of men who are equally honest and intelligent as himself.

*Id.* at 501–502. Relatedly, the Texas Court of Criminal Appeals has recognized that one

purpose of an *Allen* charge is to indicate "to a juror that some deference is owed to the

opinion of the majority of the other jurors." *Montoya*, 810 S.W.2d at 166.

Though the charge in this case directed only the minority of jurors to "consider

whether they are basing their opinion on speculation or surmise and not on the evidence

in the case," the trial court was never advised as to the numerical split of the jurors, nor

even which side had a majority at the time the charge was issued. *Cf. Ajiboye*, 961 F.2d

at 893–94. Accordingly, it cannot be said that the charge improperly conveyed the trial

---

[6] The *Allen* Court described the instructions at issue in that case as follows:

> These instructions . . . were, in substance, that in a large proportion of cases absolute certainty could not be expected; that, although the verdict must be the verdict of each individual juror, and not a mere acquiescence in the conclusion of his fellows, yet they should examine the question submitted with candor, and with a proper regard and deference to the opinions of each other; that it was their duty to decide the case if they could conscientiously do so; that they should listen, with a disposition to be convinced, to each other's arguments; that, if much the larger number were for conviction, a dissenting juror should consider whether his doubt was a reasonable one which made no impression upon the minds of so many men, equally honest, equally intelligent with himself. If, []on the other hand, the majority were for acquittal, the minority ought to ask themselves whether they might not reasonably doubt the correctness of a judgment which was not concurred in by the majority.

*Allen v. United States*, 164 U.S. 492, 501 (1896).

court's opinion of the case. *See West*, 121 S.W.3d at 108–09. Further, the charge did not contain any language, similar to that in *Green*, suggesting that the majority will necessarily have better judgment than the minority. *Cf.* 309 F.2d at 855. Courts have regularly approved of *Allen* charges containing similar language addressed only to the jury minority. *See United States v. Kelly*, 783 F.2d 575, 577 (5th Cir. 1986); *United States v. Anderton*, 679 F.2d 1199, 1203 n.13 (5th Cir. 1982); *United States v. Bottom*, 638 F.2d 781, 787 (5th Cir. 1981); *West*, 121 S.W.3d at 108–09; *see also Aguilar v. State*, No. 02-18-00175-CR, 2018 WL 4140741, at *2 (Tex. App.—Fort Worth Aug. 30, 2018, pet. ref'd) (mem. op., not designated for publication).

Sanchez emphasizes that the charge did not contain language, often used in *Allen* charges, instructing the jurors that they may not abandon the beyond-a-reasonable-doubt standard or "violate [their] conscience" in attempting to reach a verdict. *See, e.g.*, *Hollie v. State*, 967 S.W.2d 516, 522 (Tex. App.—Fort Worth 1998, pet. ref'd) (approving charge which stated: "With these additional instructions you are requested to deliberate in an effort to arrive at a verdict that is acceptable to all members of the jury if you can do so without doing violence to your conscience. Do not violate your conscience but continue to deliberate"). However, the charge stated that "the verdict must be the verdict of each individual juror, and not a mere acquiescence in the conclusion of other jurors," and it instructed the jury to "decide the case" only if it could "conscientiously do so." We do not believe that the use of this language, in the context and circumstances of this case, rendered the charge unduly coercive. *See Lowenfield*, 484 U.S. at 237; *State v. Williams*, 932 S.W.2d 546, 555 (Tex. App.—Tyler 1995, writ denied) (finding a charge containing identical language not unduly coercive); *see also Krause v. State*, No. 01-18-00447-CR,

2019 WL 5996369, at *6 (Tex. App.—Houston [1st Dist.] Nov. 14, 2019, no pet.) (mem. op., not designated for publication) (same); *Conran v. State*, No. 03-96-00364-CR, 1997 WL 420974, at *4 (Tex. App.—Austin July 24, 1997, pet. ref'd) (not designated for publication) (same).

For the foregoing reasons, we overrule Sanchez's second issue.

### III.   CONCLUSION

The trial court's judgment is affirmed.

YSMAEL D. FONSECA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
21st day of August, 2025.